UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NML CAPITAL, LTD., | : | 08 Civ. 2541 (TPG) |
| Plaintiff, | : | ECF Case |
| | : | |
| v. | : | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

## DECLARATION OF SUSAN Y. SHAMOTO IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SUSAN Y. SHAMOTO makes the following declaration, pursuant to 28 U.S.C. § 1746:

1.      I am associated with the firm Dechert LLP, attorneys for plaintiff NML Capital, Ltd. ("NML"). I submit this Declaration in support of NML's motion for summary judgment against the Republic of Argentina ("Argentina") to set forth certain facts and to adduce certain documents that are germane to that motion. I have personal knowledge of the facts set forth here, and the attached documents were assembled either by me or by persons working at my direction.

2.      As set forth in the Complaint, NML seeks to recover $16,719,628.00 principal amount of certain 2018 Global Bonds, designated CUSIP No. 040114GG9 (the 2018 Bonds"). The 2018 Bonds were issued by the Republic of Argentina ("Argentina") pursuant to a Fiscal Agency Agreement dated October 19, 1994 ("FAA"). See FAA, a true and correct copy of which is attached as Exhibit 1.

3.      On December 24, 2001, Argentina declared a moratorium on payment of its external sovereign debt.  See *Argentina's Interim President Suspends Debt*, CNN.com (December 24, 2001), a true and correct copy of which is attached as Exhibit 2.  Since declaring the moratorium, Argentina has failed to make any payments of interest or principal on the 12% Bonds.  See Answer, dated May 13, 2008, a true and correct copy of which is attached as Exhibit 3.

4.      This moratorium is still in effect.  Indeed, with the enactment of Argentina Law No. 26,017, in February 2005, Argentina repudiated its external indebtedness and declared its intention never to pay NML or any other bondholder who did not participate in Argentina's 2005 debt restructuring.  A true and correct copy of Argentine Law No. 26,071, with translation, is attached as Exhibit 4.

5.      On February 28, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring the $16,719,628.00 principal amount of the 2018 Bonds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.  A true and correct copy of the February 28, 2007 letter to Bankers Trust Company is attached as Exhibit 5.

6.      The declaration of the moratorium by Argentina and its failure to pay interest constitute "Events of Default" under the terms of the FAA.  Section 12 of the FAA specifically defines Events of Default to include:

> (a)      Non-Payment:  the Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days; [and]

2

\*    \*    \*

(d)    Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

See Ex. 1 (FAA), § 12.

7.    In a related action, NML Capital, Ltd. v. Republic of Argentina, No. 07 Civ. 1910 (TPG) (S.D.N.Y. March 5, 2007), ("NML IV"), the Court has already granted NML's motion for summary judgment for principal plus accrued interest on the 2018 Bonds with a principal face value of $21,456,000.00. NML Capital, Ltd. v. Republic of Argentina, No. 07 Civ. 1910 (TPG) (S.D.N.Y. April 10, 2008). The 2018 Bonds at issue, the affirmative defenses raised by Argentina and the core facts about the NML IV action are identical in virtually all material respects to those at issue in this action.

8.    Moreover, in scores of cases like this one, this Court has granted summary judgment to beneficial owners of bonds governed by the FAA based on Argentina's default on such bonds. E.g., Pasquali v. Republic of Argentina, No. 05 Civ. 10636 (TPG), 2006 WL 3316975, at *3 (S.D.N.Y. Nov. 14, 2006); FFI Fund, Ltd. v. Republic of Argentina, No. 05 Civ. 3328 (TPG), 2006 WL 435734, at *2 (S.D.N.Y. Feb. 23, 2006); Greylock Global Distressed Debt Master Fund, Ltd. v. Republic of Argentina, No. 05 Civ. 4246 (TPG), 2006 WL 397908, at *2 (S.D.N.Y. Feb. 17, 2006) ("Greylock"); EM Ltd. v. Republic of Argentina, No. 03 Civ. 2507 (TPG), 2003 WL 22120745, at *2 (S.D.N.Y. Sep. 12, 2003), aff'd, 382 F.3d 291 (2d Cir. 2004); Applestein v. Republic of Argentina, No. 02 Civ. 4124 (TPG), 2003 WL 22743762, at *3 (S.D.N.Y. Nov. 20, 2003); Lightwater Corp. v. Republic of Argentina, Nos. 02 Civ. 3804, 3808 & 5932 (TPG), 2003 WL 1878420, at *4 (S.D.N.Y. Apr. 14, 2003).

9.    In other actions dealing with Argentina's default under the FAA – including <u>NML IV</u> – the Court rejected many of the affirmative defenses Argentina has raised in this action. <u>Compare</u> Argentina's "Answer" in <u>NML IV</u>, No. 07 Civ. 1910 (TPG) (S.D.N.Y. filed May 4, 2007), a true and correct copy of which is attached as Exhibit 6 <u>with</u> <u>NML IV</u>, No. 07 Civ. 1910, at 13 (S.D.N.Y. April 10, 2008); <u>compare</u> Argentina's "Answer" in <u>Lightwater</u>, No. 02 Civ. 3804 (TPG) (S.D.N.Y. filed July 16, 2002), a true and correct copy of which is attached as Exhibit 7 <u>with</u> <u>Lightwater</u>, 2003 WL 1878420, at *4; <u>compare</u> Argentina's "Answer" in <u>EM</u>, No. 03 Civ. 2507 (TPG) (S.D.N.Y. filed June 18, 2003), a true and correct copy of which is attached as Exhibit 8 <u>with</u> <u>EM</u>, 2003 WL 22120745, at *2; <u>compare</u> Argentina's "Answer" in <u>Pasquali</u>, No. 05 Civ. 10636 (TPG) (S.D.N.Y. dated Feb. 21, 2006), a true and correct copy of which is attached as Exhibit 9 <u>with</u> <u>Pasquali</u>, 2006 WL 3316975, at *3.

10.    By reason of the foregoing, Argentina has defaulted on its obligations to NML, and summary judgment against it is warranted.

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Executed in New York, New York
on this 25th day of July, 2008

/s/ Susan Y. Shamoto
Susan Y. Shamoto

**EXHIBIT 1**

File No.33-83954 Exhibit B
Rule 424(b)(4)

RECD S.E.C.

.T 2 4 1994

016

FISCAL AGENCY AGREEMENT

between

THE REPUBLIC OF ARGENTINA

and

BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

## TABLE OF CONTENTS

                                                                    Page

1.    Securities Issuable in Series . . . . . . . . . . . . .    1

2.    Appointment of Fiscal Agent; Paying Agents . . . . . . .    3

3.    Authentication . . . . . . . . . . . . . . . . . . . . .    3

4.    Registration, Transfers and Exchanges  . . . . . . . . .    4

5.    Global Securities  . . . . . . . . . . . . . . . . . . .    6

6.    Payment  . . . . . . . . . . . . . . . . . . . . . . . .    9

7.    Additional Amounts . . . . . . . . . . . . . . . . . . .   11

8.    Mutilated, Destroyed, Stolen or Lost Certificates  . . .   11

9.    Redemption and Purchases . . . . . . . . . . . . . . . .   12

10.   Cancellation and Destruction . . . . . . . . . . . . . .   14

11.   Negative Pledge and Covenants  . . . . . . . . . . . . .   14

12.   Default; Acceleration of Maturity  . . . . . . . . . . .   17

13.   Limit on Liability; Acceptance of Appointment  . . . . .   19

14.   Expenses and Indemnity . . . . . . . . . . . . . . . . .   20

15.   Successor Fiscal Agent . . . . . . . . . . . . . . . . .   20

16.   Meetings of Holders of Securities; Modifications . . . .   22

17.   Further Issues . . . . . . . . . . . . . . . . . . . . .   26

18.   Reports  . . . . . . . . . . . . . . . . . . . . . . . .   26

19.   Forwarding of Notice; Inquiries  . . . . . . . . . . . .   27

20.   Listings . . . . . . . . . . . . . . . . . . . . . . . .   27

21.   Notices  . . . . . . . . . . . . . . . . . . . . . . . .   27

22.   Consent to Service; Jurisdiction . . . . . . . . . . . .   28

23.   Governing Law and Counterparts . . . . . . . . . . . . .   29

2

Page

24. Headings . . . . . . . . . . . . . . . . . . . . . . . 29

Exhibit A - Form of Registered Security

## THE REPUBLIC OF ARGENTINA

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1. **Securities Issuable in Series.** (a) The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series"). The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement. The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

period or periods within which, and the terms and conditions upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation; (ix) the minimum denomination and any multiples thereof of the Securities of such Series, which may be in U.S. dollars, another foreign currency, units of two or more currencies or amounts determined by reference to an index; (x) the currency or currencies in which the principal, premium, if any, or interest on such Securities may be payable; (xi) the manner in which the amount of payments of principal, premium, if any, or interest on such Securities is to be determined and if such determination is to be made with reference to any index; (xii) any covenants or agreements of the Republic and events which give rise to the right of a holder of a Security of such Series to accelerate the maturity of such Security other than such covenants, agreements or events specified herein; and (xiii) any other terms of the Securities of such Series.  Securities may be issuable pursuant to warrants (if so provided in the text of such Securities) and the Fiscal Agent may act as warrant agent or in any similar capacity in connection therewith.

(b)    The Securities of a Series are to be issued in fully registered form only, without interest coupons, and will be issuable in the denominations specified in the text of the Securities of such Series, substantially in the form of Exhibit A hereto ("registered Securities").   The Securities of a Series may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistent herewith, be determined by the officials executing such Securities, as evidenced by their execution of such Securities.  All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein.

(c)    The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

2

2.   Appointment of Fiscal Agent; Paying Agents.
(a)   The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, New York, New York 10006 as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Securities, upon the terms and conditions set forth herein.   Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".   The Republic reserves the right to appoint different fiscal agents for different series of securities.

(b)   The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the applicable payment of principal, premium, if any, and interest or Additional Amounts (as defined in Section 7 hereof), if any, on the Securities at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Security is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.   The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.   The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Securities on terms previously approved in writing by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.   Authentication.   (a)   The Fiscal Agent shall, upon delivery of the Securities to it by the Republic, and a written order or orders to authenticate and deliver Securities in a stated aggregate principal amount, (i) authenticate and register not more than said aggregate principal amount of Securities and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Securities and deliver them in accordance with the provisions of Sections 4, 5 and 9 of this Agreement.   The total principal amount of the Securities to be issued and outstanding at any time shall not be limited hereby.

(b)   The Fiscal Agent may, with the prior written consent of the Republic, appoint by an instrument or instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a Series
and, with such consent, vary or terminate any such
appointment upon written notice and approve any change in
the office through which any authenticating agent acts.  The
Republic (by written notice to the Fiscal Agent and the
authenticating agent whose appointment is to be terminated)
may also terminate any such appointment at any time.  The
Fiscal Agent hereby agrees to solicit written acceptances
from the entities concerned (in form and substance
satisfactory to the Republic) of such appointments.  In its
acceptance of such appointment, each such authenticating
agent shall agree to act as an authenticating agent pursuant
to the terms and conditions of this Agreement.

(c)   Until definitive Securities of a Series are
prepared, the Republic may execute, and there shall be
authenticated and delivered in accordance with the
provisions hereof (in lieu of definitive Securities of such
Series), temporary Securities of such Series.  Such
temporary Securities of a Series shall be subject to the
same limitations and conditions and entitled to the same
rights and benefits as definitive Securities of such Series,
except as provided herein or therein.  Temporary Securities
of a Series shall be exchangeable for definitive Securities
of such Series when such definitive Securities are available
for delivery; and upon the surrender for exchange of such
temporary Securities of a Series, the Republic shall execute
and there shall be authenticated and delivered, in
accordance with the provisions of Sections 3 and 4 hereof,
in exchange for such temporary Securities of a Series, a
like aggregate principal amount of definitive Securities of
such Series and of like tenor.  The Republic shall pay all
charges, including (without limitation) stamp and other
taxes and governmental charges, incident to any exchange of
temporary Securities for definitive Securities.  All
temporary Securities shall be identified as such and shall
describe the right of the holder thereof to effect an
exchange for definitive Securities and the manner in which
such an exchange may be effected.

4.   Registration, Transfers and Exchanges.  (a)
The Fiscal Agent, as agent of the Republic for such purpose,
will at all times keep at the office of the Fiscal Agent in
the Borough of Manhattan, The City of New York, a register
or registers for the registration and registration of
transfers and exchanges of Securities, in which shall be
entered the names and addresses of the registered holders of
Securities and the particulars of the Securities held by
such registered holders.  Subject to Section 5 hereof, upon
surrender for transfer of any Security of any Series at said
office, the Fiscal Agent shall authenticate, register and

4

deliver in the name of the transferee or transferees a new Security or Securities of any Series for a like aggregate principal amount. Subject to Section 5 hereof, upon surrender of any Security at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Security a new Security or new Securities of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Securities.

(b)   All new Securities authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Securities of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)   All Securities presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)   The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Securities; however, the Republic may require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Securities, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)   The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Security is registered as the owner of such Security for the purpose of receiving payment of principal of and interest on such Security, and all other purposes whatsoever, whether or not such Security be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)   The Fiscal Agent shall not be required to register any transfer or exchange of Securities during the period from the Regular Record Date (as defined in such Securities) to the Interest Payment Date (as defined in such

Securities) and for the purposes of any interest payment
made in accordance with Section 6 hereof, such payment shall
be made to those persons in whose names the Securities are
registered on such Regular Record Date.

5.  **Global Securities.** The Securities of any
Series may be issued in whole or in part in the form of one
or more global securities ("Global Securities") that will be
deposited with, or on behalf of, a depositary (the
"Depositary") relating to such Series.  Global Securities
may be issued only in fully registered form and in either
temporary or definitive form.  Unless and until it is
exchanged in whole or in part for Securities in definitive
form, a Global Security may not be transferred except as a
whole by the Depositary for such Global Security to a
nominee of such Depositary or by a nominee of such
Depositary to such Depositary or another nominee of such
Depositary or by such Depositary or any nominee of such
Depositary to a successor Depositary or any nominee of such
successor.

Upon the issuance of a Global Security, the
Depositary for such Global Security will credit on its book-
entry registration and transfer system the respective
principal amounts of the Securities represented by such
Global Security to the accounts of Persons that have
accounts with such Depositary ("Participants").  The
accounts to be credited shall be designated by the agents or
underwriters with respect to such Securities or by the
Republic if such Securities are offered and sold directly by
the Republic.  Ownership of beneficial interests in a Global
Security will be limited to Participants or Persons that may
hold interests through Participants.  Ownership of
beneficial interests in a Global Security will be shown on,
and the transfer of that ownership will be affected only
through, records maintained by the applicable Depositary
(with respect to interests of Participants) and records of
Participants (with respect to interests of Persons who hold
through Participants).  Owners of beneficial interests in a
Global Security (other than Participants) will not receive
written confirmation from the applicable Depositary of their
purchase.  Each beneficial owner is expected to receive
written confirmation providing details of the transaction,
as well as periodic statements of its holdings, from the
Depositary (if such beneficial owner is a Participant) or
from the Participant through which such beneficial owner
entered into the transaction (if such beneficial owner is
not a Participant).  The laws of some states require that
certain purchasers of securities take physical delivery of
such securities in definitive form.  Such limits and such

laws may impair the ability to own, pledge or transfer beneficial interests in a Global Security.

So long as the Depositary for a Global Security, or its nominee, is the registered owner of such Global Security, such Depositary or such nominee, as the case may be, will be considered the sole owner or holder of the Securities represented by such Global Security for all purposes under this Agreement. Except as specified below or with respect to the terms of Securities of a Series, owners of beneficial interests in a Global Security will not be entitled to have any of the individual Securities represented by such Global Security registered in their names, and will not receive or be entitled to receive physical delivery of any such Securities in definitive form and will not be considered the owners or holders thereof under such Securities or this Agreement. Accordingly, each Person owning a beneficial interest in a Global Security must rely on the procedures of the Depositary for such Global Security and, if such Person is not a Participant, on the procedures of the Participant through which such Person owns its interest, to exercise any rights of a holder under the Securities or this Agreement. The Republic understands that under existing industry practices, if the Republic requests any action of holders, or an owner of a beneficial interest in such Global Security desires to take any action which a holder is entitled to take under the Fiscal Agency Agreement, the Depositary for such Global Security would authorize the Participants holding the relevant interests to take such action, and such Participants would authorize beneficial owners owning through such Participants to take such action or would otherwise act upon the instructions of beneficial owners holding through them.

Payments of principal of and any premium and any interest on Securities registered in the name of a Depositary or its nominee will be made to the Depositary or its nominee, as the case may be, as the holder of the Global Security representing such Securities. None of the Republic, any Paying Agent or the Fiscal Agent, in its capacity as registrar for such Debt Securities, will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

The Republic expects that the Depositary for a series of Securities or its nominee, upon receipt of any payment of principal, premium or interest in respect of a Global Security representing such Securities will credit

7

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary. The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name". Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities. If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the Securities held in the form of Global Securities. In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be canceled by the Fiscal Agent.

Securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments to be made in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

6.  Payment.  (a)  The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

no responsibility with respect to any funds so provided by the Republic to any such Paying Agent.

(b)  All payments with respect to the Global Securities shall be made by the Fiscal Agent to the Depositary in accordance with the regular procedures established from time to time by the Depositary.

(c)  Payment of principal and premium, if any, in respect of Securities in definitive registered form issued pursuant hereto shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement against surrender of such Securities.  Any interest on Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons in whose names such Securities are registered on the register maintained for such purposes at the close of business on the record dates designated in the text of the Securities of such Series.  If so provided with respect to the Securities of a Series, payments of interest due prior to or on maturity may be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Securities, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Securities.  Such check shall be made payable to the order of the registered holder or, in the case of joint registered holders, to the order of all such joint holders (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint holders whose name stands first in the register as one of such joint holders.  The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Securities sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d)  All money paid to the Fiscal Agent under Section 6(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Securities to be applied by the Fiscal Agent to payments due on the Securities at the time and in the manner provided for in this Agreement and the Securities.  Any money deposited with the Fiscal Agent for the payment in respect of any Security remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic upon written request without interest, and the registered holder

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

7. **Additional Amounts.** All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

(a) to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

(b) presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment. Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

8.  Mutilated, Destroyed, Stolen or Lost
Certificates.  (a)  In case any Security certificate is
mutilated, defaced, destroyed, stolen or lost, application
for replacement shall be made to the Fiscal Agent who shall
promptly transmit such application to the Republic.  Such
application shall be accompanied by the mutilated or defaced
certificate or receipt of proof, satisfactory to the
Republic in its discretion, of the destruction, theft or
loss of the certificate, and upon receipt by it of an
indemnity satisfactory to the Republic and the Fiscal Agent,
the Republic shall execute a new certificate of like tenor,
and upon written instructions from the Republic the Fiscal
Agent shall thereupon cancel the mutilated or defaced
certificate if applicable and authenticate, register and
deliver such new certificate in exchange for the mutilated
or defaced certificate or in substitution for the destroyed,
stolen or lost certificate.  Such new certificate will be so
dated that neither gain nor loss in interest will result
from such exchange or substitution.  All expenses associated
with procuring such indemnity and with the preparation,
authentication and delivery of a new certificate will be
borne by the registered holder of the mutilated, defaced,
destroyed, stolen or lost certificate.

    (b)  Whenever any Security, alleged to have been
lost, stolen or destroyed in replacement for which a new
Security has been issued, is presented to the Fiscal Agent
or any Paying Agent for payment at maturity or at redemption
or for registration of transfer or exchange, the Fiscal
Agent or the Paying Agent, as the case may be, shall
immediately notify the Republic in respect thereof and shall
deal with such Security in accordance with the Republic's
instructions.

9.  Redemption and Purchases.  (a)  Unless
otherwise permitted by the terms of the Securities of a
Series, Securities will not be redeemable prior to maturity
at the option of the Republic or the registered holders
thereof.

    (b)  The Republic hereby authorizes and directs
the Fiscal Agent to administer the sinking fund with respect
to the Securities of any Series having a mandatory sinking
fund or similar provision in accordance with the provisions
set forth in the terms of the Securities of such Series.  If
the provisions of the Securities of a Series permit the
Republic to redeem Securities of such Series at its option,
then the Republic shall, unless otherwise provided in the
terms of the Securities of such Series, give written notice
to the Fiscal Agent of the principal amount of Securities of
such Series to be so redeemed not less than 60 days prior to

12

the optional redemption date.  If the provisions of the
Securities of a Series permit the Republic to redeem
Securities of such Series only upon the occurrence or
satisfaction of a condition or conditions precedent thereto,
then prior to the giving of notice of redemption of the
Securities of such Series, the Republic shall deliver to the
Fiscal Agent a certificate stating that the Republic is
entitled to effect such redemption and setting forth in
reasonable detail a statement of facts showing that such
condition or conditions precedent have occurred or been
satisfied.  If the provisions of the Securities of a Series
obligate the Republic at the request of the holders to
redeem Securities of such Series upon the occurrence of
certain events (each hereinafter referred to as a
"Redemption Event"), then the Republic shall promptly
deliver written notice to the Fiscal Agent that a Redemption
Event has occurred.  Promptly after receiving written notice
of a Redemption Event, the Fiscal Agent shall deliver
written notice to each holder of the Securities of such
Series stating that a Redemption Event has occurred and that
such holder may tender its Securities by delivering written
notice of its election to tender for redemption, together
with the certificate or certificates for the Securities to
be redeemed, to the Fiscal Agent within 60 days of the
Fiscal Agent's notice (hereinafter referred to as the
"Option Period").  Thereafter, the Republic shall (i) in the
manner provided in the provisions of the Securities of such
Series and as contemplated by Section 6 hereof, arrange with
the Fiscal Agent (and each Paying Agent for the purpose, if
applicable) for the provision of funds sufficient to make
payments to such holders in respect of such redemptions, and
(ii) redeem such Securities within 60 days of the expiration
of the Option Period.  The Fiscal Agent shall provide the
Republic from time to time during and upon expiration of the
Option Period with reasonable detailed information as to
Securities tendered for redemption.

   All notices of redemption of or Redemption Events
relating to Securities of a Series to the holders thereof
shall be made in the name and at the expense of the Republic
and shall be given in accordance with the provisions
applicable thereto set forth in the terms of the Securities
of such Series.

   Whenever less than all the Securities of a Series
with the same interest rate and maturity at any time
outstanding are to be redeemed at the option of the
Republic, the particular Securities of such Series with such
interest rate and maturity to be redeemed shall be selected
not more than 60 days prior to the redemption date by the
Fiscal Agent from the outstanding Securities of such Series

not previously called for redemption by such usual method as the Fiscal Agent shall deem fair and appropriate, which method may provide for the selection for redemption of portions of the principal amount of registered Securities of such Series the minimum denominations of which, if any, will be specified in the terms of the Securities of such Series. Upon any partial redemption of a registered Security of a Series, the Fiscal Agent shall authenticate and deliver in exchange therefor one or more registered Securities of such Series, of any authorized denomination and like tenor as requested by the holder thereof, in aggregate principal amount equal to the unredeemed portion of the principal of such Security.

(c) The Republic may at any time purchase Securities at any price in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives. Securities so purchased by the Republic, may, at the Republic's discretion, be held, resold or surrendered to the Fiscal Agent for cancellation. The Securities so purchased, while held by or on behalf or for the benefit of the Republic shall not entitle the registered holder thereof to vote at any meetings of registered holders of Securities and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the registered holders of the Securities. Notwithstanding the foregoing, the Republic will not acquire any beneficial interest in any Securities unless it gives prior written notice of each acquisition to the Fiscal Agent. The Fiscal Agent will be entitled to rely without further investigation on any such notification (or lack thereof).

(d) If the Republic elects to cancel any Securities when Securities have been issued in the form of a Global Security, it may request the Fiscal Agent to instruct the Depositary to reduce the outstanding aggregate principal amount of the Global Securities in accordance with the regular procedures of the Depositary in effect at such time.

10. <u>Cancellation and Destruction</u>. All Securities which are paid at maturity or upon earlier repurchase, or are mutilated, defaced or surrendered in exchange for other certificates, shall be cancelled by the Fiscal Agent who shall register such cancellation. The Fiscal Agent shall, as soon as practicable after the date of any such cancellation, furnish the Republic with a certificate or certificates stating the serial numbers and total number of Securities that have been cancelled. The Fiscal Agent shall destroy all cancelled Securities in accordance with the instructions of the Republic and shall furnish to the

14

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Securities destroyed hereunder.

11. Negative Pledge and Covenants. So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i) any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii) any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii) any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

15

(iv)  any Lien in existence on the date of this Agreement;

(v)  any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)  any Lien on any of the Par and Discount Bonds; and

(vii)  any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

16

"Domestic Foreign Currency Indebtedness" means (i)
the following indebtedness:  (a) Bonos del Tesoro issued
under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos
de Consolidación issued under Law No. 23,982 and Decree No.
2140/91, (c) Bonos de Consolidación de Deudas Previsionales
issued under Law No. 23,982 and Decree No. 2140/91, (d)
Bonos de la Tesorería a 10 Años de Plazo issued under Decree
No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería
a 5 Años Plazo issued under Decree No. 211/92 nd Decree No.
526/92, (f) Ferrobonos issued under Decree No. 52/92 and
Decree No. 526/92 and (g) Bonos de Consolidación de Regalías
Hidrocarburíferas a 16 Años de Plaxo issued under Decree No
2284/92 and Decree No. 54/93; (ii) any indebtedness issued
in exchange, or as replacement, for the indebtedness
referred to in (i) above; and (iii) any other indebtedness
payable by its terms, or which at the option of the holder
thereof may be payable, in a currency other than the lawful
currency of the Republic of Argentina which is (a) offered
exclusively within the Republic of Argentina or (b) issued
in payment, exchange, substitution, discharge or replacement
of indebtedness payable in the lawful currency of the
Republic of Argentina; provided that in no event shall the
following indebtedness be deemed to constitute "Domestic
Foreign Currency Indebtedness": (1) Bonos Externos de la
República Argentina issued under Law No. 19,686 enacted on
June 15, 1972 and (2) any indebtedness issued by the
Republic in exchange, or as replacement, for any
indebtedness referred to (1) above.

        12.  Default; Acceleration of Maturity.  If any of
the following events ("Events of Default") with respect to
the Securities of any Series occurs and is continuing:

        (a)  Non-Payment:  the Republic fails to pay any
principal of any of the Securities of such Series when due
and payable or fails to pay any interest on any of the
Securities of such Series when due and payable and such
failure continues for a period of 30 days; or

        (b)  Breach of Other Obligations:  the Republic
does not perform or comply with any one or more of its other
obligations in the Securities of such Series or in this
Agreement, which default is incapable of remedy or is not
remedied within 90 days after written notice of such default
shall have been given to the Republic by the Fiscal Agent;
or

        (c)  Cross Default:  any event or condition shall
occur which results in the acceleration of the maturity
(other than by optional or mandatory prepayment or
redemption) of the Securities of any other Series or of any

17

20

Public External Indebtedness of the Republic having an aggregate principal amount of U.S. $30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, the Securities of any other Series or any such Public External Indebtedness having an aggregate principal amount of U.S. $30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d)  Moratorium:  a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic or;

(e)  Validity:  the validity of the Securities of such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate principal amount of the Securities of such Series by notice in writing to the Republic at the specified office of the Fiscal Agent shall declare the principal amount of all the Securities of such Series to be due and payable immediately, and, in the case of (a) and (d) above, each holder of Securities of such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Securities of such Series shall have been cured; provided that in the case of (b), (d) and (e) above, such event is materially prejudicial to the interests of the holders of the Securities of such Series, and provided further, that if, at any time after the principal of the Securities of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Securities which shall have become due and otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment or deposit) and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisers, and any and all defaults under the Securities of such Series, other than the non-payment of principal on the

Securities of such Series which shall have become due solely by declaration, shall have been remedied, then, and in every such case, the holders of 75 percent in aggregate principal amount of the Securities of such Series then outstanding, after a meeting of holders of Securities held in accordance with the procedures described in Section 16 below, by written notice to the Republic at the specified office of the Fiscal Agent, may on behalf of the holders of all of the Securities of such Series waive all defaults and rescind and annul such declaration and its consequences: but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

13.    (a)    Limit on Liability.  In acting under this Agreement the Fiscal Agent and any Paying Agent are acting solely as agents of the Republic and do not assume any obligation or relationship of agency or trust for or with any of the holders of the Securities, except that all funds held by the Fiscal Agent for payment of principal or interest shall be held in trust, subject to the provisions of Section 6.

(b)    Acceptance of Appointment.  The Fiscal Agent and each Paying Agent accepts its obligations set forth in or arising under this Agreement, the Paying Agency Agreements and the Securities upon the terms and conditions hereof and thereof, including the following, to all of which the Republic agrees and to all of which the holders of the Securities shall be subject:

(i)    the Fiscal Agent may consult as to legal matters with lawyers selected by it, who may be employees of or regular independent counsel to the Republic, and the Fiscal Agent shall be protected and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion of such lawyers; and

(ii)    the Fiscal Agent and each Paying Agent, and their officers, directors and employees, may become the holder of, or acquire any interest in, any Securities, with the same rights that it or they would have if it were not the Fiscal Agent or a Paying Agent hereunder, or they were not such officers, directors, or employers, and may engage or be interested in any financial or other transaction with the Republic and may act on, or as depository, trustee or agent for, any committee or body of holders of Securities or other obligations of the Republic as freely as if it were not

19

22

the Fiscal Agent or a Paying Agent hereunder or they were not such officers, directors, or employees.

14.  Expenses and Indemnity.  (a)  In connection with the Fiscal Agent's appointment and duties as Fiscal Agent, the Republic will pay the Fiscal Agent compensation agreed upon by them.  The Republic will indemnify the Fiscal Agent and each Paying Agent against any loss or liability and agrees to pay or reimburse the Fiscal Agent and each Paying Agent for any reasonable expense, which loss, liability or reasonable expense may be incurred by the Fiscal Agent or any Paying Agent by reason of, or in connection with, the Fiscal Agent's or any Paying Agent's appointment and duties as such, except as such result from the negligence, bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.  In addition, the Republic shall pursuant to arrangements separately agreed upon by the Republic and the Fiscal Agent, transfer to the Fiscal Agent, upon presentation of substantiating documentation satisfactory to the Republic, amounts sufficient to reimburse the Fiscal Agent for certain out-of-pocket expenses reasonably incurred by it and by any Paying Agent in connection with their services.  The obligation of the Republic under this paragraph shall survive payment of the Securities and resignation or removal of the Fiscal Agent.

(b)  The Fiscal Agent and each Paying Agent agrees to indemnify and hold harmless the Republic against all direct claims, actions, demands, damages, costs, losses and liabilities (excluding consequential and punitive damages) arising out of or relating to the bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.

15.  Successor Fiscal Agent.  (a)  The Republic agrees that there shall at all times be a Fiscal Agent hereunder, and that the Fiscal Agent shall be a bank or trust company organized and doing business under the laws of the United States of America or of the State of New York, in good standing and having a place of business in the Borough of Manhattan, The City of New York, and authorized under such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal Agent hereunder may be merged or converted, or any corporation with which the Fiscal Agent may be consolidated, or any corporation or bank resulting from any merger, conversion or consolidation to which the Fiscal Agent shall sell or otherwise transfer all or substantially all of the corporate trust business of the Fiscal Agent, provided that

20

23

it shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, but subject to prior notice to and the prior approval of the Republic.

(b)  The Fiscal Agent may at any time resign by giving written notice to the Republic of its resignation, specifying the date on which its resignation shall become effective (which shall not be less than 120 days after the date on which such notice is given unless the Republic shall agree to a shorter period); provided that no such notice shall expire less than 30 days before or 30 days after the due date for any payment of principal or interest in respect of the Securities.  The Republic may remove the Fiscal Agent at any time by giving written notice to the Fiscal Agent specifying the date on which such removal shall become effective.  Such resignation or removal shall only take effect upon the appointment by the Republic of a successor Fiscal Agent and upon the acceptance of such appointment by such successor Fiscal Agent.  Any Paying Agent may resign or may be removed at any time upon like notice, and the Republic in any such case may appoint in substitution therefor a new Paying Agent or Paying Agents.

(c)  The appointment of the Fiscal Agent hereunder shall forthwith terminate, whether or not notice of such termination shall have been given, if at any time the Fiscal Agent becomes incapable of performing its duties hereunder, or is adjudged bankrupt or insolvent, or files a voluntary petition on bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a liquidator or receiver of all or any substantial part of its property or admits in writing its inability to pay or meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for the winding up or dissolution of the Fiscal Agent, or if a liquidator or receiver of the Fiscal Agent of all or any substantial part of its property is appointed, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency law or if any public officer takes charge or control of the Fiscal Agent or its property or affairs for the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such resignation or removal of the Fiscal Agent, or if the Fiscal Agent shall become unable to act as such or shall cease to be qualified as aforesaid, the Republic shall appoint a successor Fiscal Agent, qualified as aforesaid.  Upon the appointment of a successor Fiscal Agent and its acceptance

of such appointment, the retiring Fiscal Agent shall, at the direction of the Republic and upon payment of its compensation and expenses then unpaid, deliver and pay over to its successor any and all securities, money and any other properties then in its possession as Fiscal Agent and shall thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Republic an instrument accepting such appointment hereunder, and thereupon such successor without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor, with like effect as if originally named Fiscal Agent hereunder.

(e) If the Fiscal Agent resigns or ceases to act as the Republic's fiscal agent in respect of the Securities pursuant to Section 15(c) of this Agreement, the Fiscal Agent shall only be entitled to annual fees otherwise payable to it under this Agreement on a pro rata basis for that period since the most recent anniversary of this Agreement during which the Fiscal Agent has acted as fiscal agent hereunder. In the event that the Fiscal Agent ceases to act as the Republic's fiscal agent in respect of the Securities for any other reason, the Fiscal Agent shall be entitled to receive the full amount of the annual fees payable to it in respect of the Securities pursuant to Section 14 of this Agreement.

16. **Meetings of Holders of Securities; Modifications**. (a) A meeting of registered holders of Securities of any Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given or taken by registered holders of Securities of any Series or to modify, amend or supplement the terms of the Securities of any Series or this Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of registered holders of Securities of any Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine. Notice of every meeting of registered holders of Securities of any Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of any Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding

22

Securities of any Series (as defined in subsection (d) of this Section) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of any Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

To be entitled to vote at any meeting of registered holders of Securities of any Series, a person shall be a registered holder of Outstanding Securities of any Series or a person duly appointed by an instrument in writing as proxy for such a holder. Any person appointed by an instrument in writing as proxy for a registered holder need not be a registered holder of Outstanding Securities of any Series. At any meeting each registered holder shall be entitled to one vote for each of those amounts held by such holder which represent the lowest denomination in which Securities of such Series as to which such holder is a holder may be transferred. The persons entitled to vote a majority in principal amount of the Outstanding Securities of any Series shall constitute a quorum. At the reconvening of any meeting adjourned for a lack of a quorum, the persons entitled to vote 25% in principal amount of the Outstanding Securities of any Series shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. The Fiscal Agent may make such reasonable and customary regulations as it shall deem advisable for any meeting of registered holders of Securities of any Series with respect to the appointment of proxies in respect of registered holders of Securities, the record date for determining the registered holders of Securities who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 30 nor more than 90 days prior to such meeting, the adjournment and chairmanship of such meeting) the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of Securities of a Series duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the Securities of any Series with respect to the action being taken), or (ii) with the written consent of the owners of

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

27

modification shall be notified to the registered holders of Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(c)  Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof.  Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action.  New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

28

notice, consent, waiver or other action may be prepared by the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Securities of any Series.

(d)  For purposes of the provisions of this Agreement and the Securities of any Series, any Security authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)  Securities of any Series theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

(ii)  Securities of any Series which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof, premium, if any, and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Securities of any Series are present at a meeting of registered holders of Securities for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Securities of any Series owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

17.  Further Issues.  The Republic may from time to time, without notice to or the consent of the registered holders of the Securities of a Series, create and issue further securities ranking pari passu with the Securities of such Series in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further securities or except for the first payment of interest following the issue date of such further securities) and so that such further securities shall be consolidated and form a single series with the Securities of such Series and shall have the same terms as to status, redemption or otherwise as the Securities.

18.  Reports.  (a)  The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under

this Agreement. The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b) The Fiscal Agent shall (on behalf of the Holders) submit such reports or information as may be required from time to time in relation to the issue and purchase of Securities by applicable law, regulations and guidelines promulgated by the United States government.

(c) The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(d) The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the effect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of Default or Potential Event of Default has occurred and is continuing on the date of such certificate or, if an Event of Default or a Potential Event of Default has occurred, the circumstances surrounding it and the steps that the Republic has taken or proposes to take to remedy it.

(e) The Republic will send to the Fiscal Agent as soon as practicable after being so requested by the Fiscal Agent a certificate of the Republic, signed by a duly authorized official of the Republic stating the aggregate principal amount of the Securities held by or on behalf of the Republic at the date of such certificate.

19. <u>Forwarding of Notice; Inquiries</u>. (a) If the Fiscal Agent shall receive any notice or demand addressed to the Republic pursuant to the provisions of the Securities, the Fiscal Agent shall promptly forward such notice or demand to the Republic.

(b) The Fiscal Agent shall respond promptly to any inquiries received from any registered holder of Securities regarding the matters covered by paragraphs (b), (c) or (d) of Section 18 of this Agreement.

20. <u>Listings</u>. In the event that the terms of the Securities of any Series provide for a listing on any stock exchange, the Republic agrees to use all reasonable endeavors to maintain the listing of the Securities on such

30

exchange. If, however, it is unable to do so, having used such endeavors, or if the maintenance of such listing is agreed by the Fiscal Agent to be unduly onerous and the Fiscal Agent is satisfied that the interests of registered holders of the Securities would not thereby be materially prejudiced, it will instead use all reasonable endeavors to obtain and maintain a listing of the Securities on such other stock exchange or exchanges as it may decide.

21. **Notices.** (a) Any communications from the Republic to the Fiscal Agent with respect to this Agreement shall be addressed to Bankers Trust Company, 4 Albany Street, New York, New York 10006, Fax No.: 212-250-6961 or 212-250-6392, Tel. No.: 212-250-6571 and any communications from the Fiscal Agent to the Republic with respect to this Agreement shall be addressed to the Subsecretaria de Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina 1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such other address as shall be specified in writing by the Fiscal Agent or by the Republic, as the case may be) and shall be delivered in person or sent by first class prepaid post or by facsimile transmission, in the case of facsimile transmission, to confirmation by telephone to the foregoing addresses. Such notice shall take effect in the case of delivery in person, at the time of delivery, in the case of delivery by first class prepaid post seven (7) business days after dispatch and in the case of delivery by facsimile transmission, at the time of confirmation by telephone.

(b) All notices to the registered holders of Securities of a Series will be published in such publications at such locations as any of the Securities of such Series are listed for the period of time of such listing and as otherwise provided pursuant to the terms of the Securities of such Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. [In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine.] Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made. Written notice will also be given to the Depositary, if at the time of such notice any of the Securities is represented by a Global Security.

22. <u>Consent to Service; Jurisdiction</u>. The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose) as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Securities or this Agreement by the holder of any Security which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Securities have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Securities hereunder, the Republic shall obtain the consent of Banco de la Nación Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

29

32

Notwithstanding the foregoing, any action arising out of or based on the Securities may be instituted by the holder of any Security in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Securities or this Agreement by the holder of any Security.

23. <u>Governing Law and Counterparts</u>. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. <u>Headings</u>. The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By: /s/ Noemi LaGreca
    Name:  Noemi LaGreca
    Title: Financial
           Representative of
           Argentina in the
           United States

BANKERS TRUST COMPANY

By: /s/ Wanda Camacho
    Name:  Wanda Camacho
    Title: Assistant
           Secretary

31

EXHIBIT A

FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend
relating to limitations on the transferability of such
global Security in such form as may be required by the U.S.
Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

THE REPUBLIC OF ARGENTINA

[Title of Series of Securities]

No. R-_____                              [Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:              _____Yes  _____No

Authorized Denominations:

Form:                           ( )  Book-Entry
                                ( )  Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:            ( )  The Interest Rate may not
                                     be changed prior to
                                     Maturity Date.

35

( ) The Interest Rate may be
changed prior to Stated
Maturity (see attached).

Optional Reset Dates
(if applicable):

Interest Payment Dates:

Optional Extension of
Maturity Date:                    _____Yes _____No

    Final Maturity:


Total Amount of OID:

Yield to Maturity:

Initial Accrual Period OID:

Optional Redemption:              _____Yes _____No

    Optional Redemption Dates:

    If applicable as described above, the Redemption Price
shall initially be      % of the principal amount of
this Security to be redeemed and shall decline at each
anniversary of the Initial Redemption Date by     % of
the principal amount to be redeemed until the
Redemption Price is 100% of such principal amount;
provided, however, that if this Security is a Discount
Note (as defined below), the Redemption Price shall be
the Amortized Face Amount (as defined below) of this
Note.

Optional Repayment:               _____Yes _____No

    Optional Repayment Dates:

    Optional Repayment Prices:

Conversion into or
Exchange for
Other Securities                  ( ) This Security may not be
converted into or
exchanged for other
securities.

( ) This Security may be
converted into or

2

*36*

exchanged for _____
[specify securities].

Terms of Conversion
or Exchange
(if applicable):

Indexed Note: _____ Yes (see attached) _____ No

Exchange Rate Agent:

Other Terms: _____ Yes _____ No

A-3

THE REPUBLIC OF ARGENTINA (herein called the "Republic"), for value received, hereby promises to pay to _____

or registered assigns, the principal sum of _____ U.S. Dollars (U.S.$ _____) [other currency] on _____ [If the Security is to bear interest prior to maturity, insert--, and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [specify frequency] in arrears on [and _____] in each year, commencing _____ (each an "Interest Payment Date"), at the rate [of _____ % per annum] [to be determined in accordance with the provisions hereinafter set forth], until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person (the "registered Holder") in whose name this Security (or one or more predecessor Securities) is registered in the register of such Securities maintained pursuant to the Fiscal Agency Agreement at the close of business on the date (whether or not a business day) [, as the case may be] (each a "Regular Record Date") [,] [_____ calendar days] next preceding such Interest Payment Date; provided, however, that the first payment of interest on any Security originally issued on a date between a Regular Record Date and an Interest Payment Date or on an Interest Payment Date will be made on the Interest Payment Date following the next succeeding Regular Record Date to the registered Holder on such next succeeding Regular Record Date. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Security (or one or more predecessor Securities) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Republic, notice whereof shall be given to registered Holders of Securities of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner [not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange.]

[Insert floating interest rate provisions, if applicable.]

[If the Security is not to bear interest prior to maturity, insert--(the "Stated Maturity"). The principal of

A-4

38

this Security shall not bear interest except in the case of a default in payment of principal upon acceleration, upon redemption or at Stated Maturity.]

Principal of (and premium, if any, on) [and interest payable at maturity or upon earlier redemption or repayment in respect of] this Security shall be payable in immediately available funds against surrender hereof at the corporate trust office of the Fiscal Agent hereinafter referred to and at the offices of such other Paying Agents as the Republic shall have appointed pursuant to the Fiscal Agency Agreement.  Payments of principal of (and premium, if any[, on]) [and interest on] this Security shall be made in same-day funds in accordance with the foregoing and subject to applicable laws and regulations, by [(if the Republic so elects) transfer to an account denominated in U.S. dollars which is maintained by the payee with [any] [a] bank [located in _____].  If the Republic does not so elect, payments of principal (and premium, if any) shall be made against surrender of this Security [if applicable, insert--, and payments of interest shall be made,] by] forwarding by post or otherwise delivering a check [on or before the due date for such payment] to the registered address of the registered Holder of this Security.  [If applicable, insert payment provisions for Securities denominated in a currency other than U.S. dollars].  This Security is a direct obligation of the Republic and does not have the benefit of any separate undertaking of other government entities (including Banco Central).  The Republic covenants that until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid as provided herein or in the Fiscal Agency Agreement, it will at all times maintain offices or agencies in the Borough of Manhattan, The City of New York for the payment of the principal of (and premium, if any[, on]) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be valid or obligatory for any purpose.

A-5

39

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
[Title]

Attest:

_____
[Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY,
as Fiscal Agent

By_____
Authorized Signatory

A-6

[Form of reverse
of Security]

This Security is one of a duly authorized issue of securities of the Republic (herein called the "Securities") issued and to be issued in one or more series in accordance with a Fiscal Agency Agreement, dated as of _____ (herein called the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (herein called the "Fiscal Agent"), which term includes any successor fiscal agent under the Fiscal Agency Agreement), copies of which Fiscal Agency Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, The City of New York. This Security is one of the Securities of the Series designated on the face hereof[, limited in aggregate principal amount to U.S.$_____]. The Fiscal Agency Agreement may be amended from time to time in accordance with the terms thereof.

The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Republic. Each Series will rank pari passu with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic.

The Securities of this Series are issuable only in fully registered form. The Securities are issuable in [the] authorized denomination[s] of [currency/U.S.$_____ [and [any integral multiple thereof] [integral multiples of [currency/U.S.$_____ above that amount]].

Until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid, the Republic shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Securities may be surrendered for registration of transfer or exchange. The Republic has initially appointed the corporate trust office of the Fiscal Agent as its agent in the Borough of Manhattan, The City of New York, for such purpose and has agreed to cause to be kept at such office a register in which subject to such reasonable regulations as it may prescribe, the Republic will provide for the registration of Securities and of transfers of Securities. The Republic reserves the right to vary or terminate the appointment of the Fiscal Agent as security

A-7

registrar or transfer agent or to appoint additional or
other registrars or transfer agents or to approve any change
in the office through which any security registrar or any
transfer agent acts, provided that there will at all times
be a security registrar in the Borough of Manhattan, The
City of New York.

Subject to the provisions on the face hereof
concerning transfer restrictions, the transfer of a Security
is registrable on the aforementioned register upon surrender
of such Security at the corporate trust office of the Fiscal
Agent duly endorsed by, or accompanied by a written
instrument of transfer in form attached hereto duly executed
by, the registered Holder thereof or his attorney duly
authorized in writing.  Upon such surrender of this Security
for registration of transfer, the Republic shall execute,
and the Fiscal Agent shall authenticate and deliver, in the
name of the designated transferee or transferees, one or
more new Securities, dated the date of authentication
thereof, of any authorized denominations and of a like
aggregate principal amount.

Subject to the provisions on the face hereof
concerning transfer restrictions, at the option of the
registered Holder upon request confirmed in writing,
Securities may be exchanged for Securities of any authorized
denominations and of a like aggregate principal amount, upon
surrender of the Securities to be exchanged at the corporate
trust office of the Fiscal Agent.  Any registration or
transfer or exchange will be effected upon the Fiscal Agent
being satisfied with the documents of title and identity of
the person making the request and subject to such reasonable
regulations as the Republic may from time to time agree with
the Fiscal Agent.  Whenever any Securities are so
surrendered for exchange, the Republic shall execute, and
the Fiscal Agent shall authenticate and deliver, the
Securities which the registered Holder making the exchange
is entitled to receive.  The new Security issued upon such
exchange shall be so dated that neither gain nor loss of
interest shall result from such exchange.  [If the Security
is a permanent global Security, insert--Notwithstanding the
foregoing, the exchange of this Security is subject to
certain limitations set forth in the Fiscal Agency Agreement
and on the face hereof.]

[In the event of a redemption of the Securities of
this series in part, the Republic shall not be required (i)
to register the transfer of or exchange any Security during
a period beginning at the opening of business 15 days
before, and continuing until, the date notice is given
identifying the Securities to be redeemed, or (ii) to

A-8

register the transfer of or exchange any Security, or portion thereof, called for redemption.]

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligation of the Republic evidencing the same indebtedness and entitled to the same benefits this Security has at the time of such registration of transfer or exchange.

No service charge shall be made for any registration of transfer or exchange, but the Republic may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith, other than an exchange in connection with a partial redemption of a Security not involving any registration of a transfer.

Prior to due presentment of this Security for registration of transfer, the Republic, the Fiscal Agent and any agent of the Republic or the Fiscal Agent may treat the person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security is overdue, and neither the Republic nor the Fiscal Agent nor any such agent shall be affected by notice to the contrary.

In any case where the due date or the payment of the principal of (and premium, if any[, on]) [or interest on] any Security[, or the date fixed for redemption of any Security,] shall be, at any place from which any check in respect thereof is to be mailed or where such Security is to be surrendered for payment [or, in the case of payments by transfer, where such transfer is to be made], a day on which banking institutions [If the Securities are denominated in U.S. dollars, insert--in The City of New York] [If the Securities are denominated in a currency other than U.S. Dollars, insert--in [name of financial center of the country in whose currency the securities are denominated] are authorized or obligated by law to close [If the Securities are denominated in a currency other than U.S. Dollars, insert--or a day on which banking institutions in [name of non-U.S. financial center] are not carrying out transactions in [name of non-U.S. currency]], then such payment need not be made on such date at such place but may be made on the next succeeding day at such place which is not a day on which banking institutions are authorized or obligated by law to close, with the same force and effect as if made on the date for such payment payable in respect of any such delay.

A-9

The Republic shall provide to the Fiscal Agent at its principal office in the Borough of Manhattan, The City of New York, prior to each date on which a payment on or in respect of the Securities of this series shall become due, monies in such amounts which (together with any amounts then held by the Fiscal Agent and available for the purpose) are sufficient to make such payment. Any monies provided by the Republic to the Fiscal Agent for the payment on or in respect of the Securities of this series and remaining unclaimed at the end of two years after such payment shall have become due shall then be returned to the Republic, and upon the return of such monies all liabilities of the Fiscal Agent with respect thereto shall cease, without, however, limiting in any way any obligation the Republic may have to pay the principal of (or premium, if any[, on]) [or interest on] this Security as the same shall become due.

So long as any Security remains outstanding, save for the exceptions set forth in the Fiscal Agency Agreement, the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66 2/3% of the registered holders of Securities of any Series then outstanding.

If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 percent in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

All payments of principal, premium, if any, and interest on this Security by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax

A-10

(together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, (if applicable, insert--(1) on _____ in any year commencing with the year _____ and ending with the year _____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)] [at any time [on or after _____, 19__], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed): If redeemed [on or before _____, ___%, _____ of the years indicated,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and there after at a redemption price equal to ___% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

such Securities of record at the close of business on such
Record Date.  [Partial redemptions must be in an amount not
less than U.S.$_____ principal amount of Securities.]

[As and for a sinking fund for the retirement of
the Securities of this Series, the Republic will, until all
Securities of this Series are paid or payment thereof
provided for, deposit with the Fiscal Agent, prior to
_____ in each year, commencing in ____ and ending in ____,
an amount in cash sufficient to redeem on such _____
[not less than U.S.$_____ and not more than]
U.S.$_____ principal amount of Securities of this Series
at the redemption price specified above for redemption
through operation of the sinking fund.  [The minimum amount
of any sinking fund payment as specified in this Paragraph
is herein referred to as a "mandatory sinking fund payment",
and any payment in excess of such minimum amount is herein
referred to as an "optional sinking fund payment".]  The
cash amount of any [mandatory] sinking fund payment is
subject to reduction as provided below.  Each sinking fund
payment shall be applied to the redemption of Securities in
this Series on such _____ as herein provided.  [The
right to redeem Securities of this Series through optional
sinking fund payments shall not be cumulative and to the
extent not availed of on any sinking fund redemption date
will terminate.]]

[Notwithstanding the foregoing, the Republic may
not, prior to _____, redeem any Securities of this Series
as [and optional sinking fund payment] contemplated by the
preceding paragraph as a part of, or in anticipation of, any
refunding operation by the application, directly or
indirectly, of monies borrowed having an interest cost to
the Republic (calculated in accordance with general accepted
financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by
the Republic otherwise than through [mandatory] sinking fund
payments may be credited against subsequent [mandatory]
sinking fund payments otherwise required to be made [in the
inverse order in which they become due].]

[The Republic (i) may deliver outstanding
Securities of this Series (other than any previously called
for redemption) and (ii) may apply as a credit Securities of
this series which have been redeemed otherwise than through
the application of [mandatory] sinking fund payments, in
each case in satisfaction of all or any part of any
[mandatory] sinking fund payment and the amount of such
[mandatory] sinking fund payment shall be reduced
accordingly.]

[In the case of any partial redemption of Securities of this Series pursuant to the sinking fund or at the option of the Republic, the Securities to be redeemed shall be selected by the Fiscal Agent not more than 60 days prior to the redemption date from the outstanding Securities not previously called for redemption, by such method as the Fiscal Agent shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to U.S.$_____ or any integral multiple thereof) of the principal amount of Securities of a denomination larger than U.S.$_____].

[This Security shall be redeemed, at the option of the registered Holder thereof, upon the occurrence, on or after _____, of a Redemption Event (as hereinafter defined), at the redemption price equal to 100% of the principal amount of this Security, together with interest accrued thereon to the date of redemption; provided, however, that the right of the registered Holder to present this Security [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] for redemption shall, if the Republic gives a Notice of Redemption Event (as hereinafter defined), terminate upon expiration of the Option Period (as hereinafter defined) relating to such Redemption Event.  In the event of the occurrence of more than one Redemption Event, each such Redemption Event shall be deemed to confer upon the registered Holder of this Security a separate right of redemption.]

[The Republic agrees that, if a Redemption Event occurs, it will promptly give written notice thereof to the Fiscal Agent (a "Notice of Redemption Event").  Promptly after receiving such Notice of Redemption Event, the Fiscal Agent shall give written notice to the registered Holder of this Security (a "Notice of Right to Tender") stating that a Redemption Event has occurred and including a form of notice (a "Redemption Notice") pursuant to which the registered Holder of this Security may elect to cause redemption.  The Republic may, but shall not be obligated to, fix a record date for the purpose of determining the registered Holders of Securities of this series entitled to elect to cause redemption of any such Holder elects to cause redemption of this Security, deliver the Redemption Notice, together with the certificate or certificates representing the Securities to be redeemed [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] to the Fiscal Agent within a period of 60 days (the "Option Period") of the date of the Notice

47

of Right to Tender, and (ii) the Republic shall select a
date for redemption (the "Redemption Date"), which shall be
within 60 days from the end of the Option Period, and, on
the Redemption Date, shall redeem the Securities tendered
for redemption within the Option Period.  At least 10 days
prior to the Redemption Date, the Republic shall [(i)]
deliver notice of the Redemption Date in the manner provided
for herein to each registered Holder who requested
redemption[, or (ii) publish notice of the Redemption Date
in the manner provided for herein, as the case may be].]

        [If the Security is a permanent global Security,
insert--It is understood that, notwithstanding the foregoing
provisions relating to redemption at the option of a
registered Holder and without otherwise limiting any right
of any other registered Holder to act by agent or proxy, the
Fiscal Agent may treat a person authorized, in a manner
satisfactory to the Fiscal Agent, by the U.S. Depositary to
take action in respect of a portion of this permanent global
Security as the registered Holder of such portion of such
Security and may make arrangements satisfactory to it, the
Republic and the U.S. Depositary in connection with this
partial redemption of this permanent global Security.]

        [Insert description of those events, if any, which
constitute Redemption Events.]

        [If notice of redemption has been given in the
manner set forth herein, the Securities so to be redeemed
shall become due and payable on the redemption date
specified in such notice and upon presentation and surrender
of the Securities [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security
satisfactory to the Fiscal Agent,] at the place or places
specified in such notice, the Securities shall be paid and
redeemed by the Republic at the places, in the manner and
currency and at the redemption price herein specified
together with accrued interest (unless the redemption date
is an Interest Payment Date) to the redemption date.  From
and after the redemption date, if monies for the redemption
of Securities called for redemption shall have been made
available at the corporate trust office of the Fiscal Agent
for redemption on the redemption date, the Securities called
for redemption shall cease to bear interest, and the only
right of the holder of such Securities shall be to receive
payment of the redemption price together with accrued
interest (unless the redemption date is an Interest Payment
Date) to the redemption date as aforesaid.  If monies for
the redemption of the Securities are not made available for
payment until after the redemption date, the Securities

called for redemption shall not cease to bear interest until such monies have been so made available.]

[Any Security which is to be redeemed only in part shall be surrendered with, if the Republic or the Fiscal Agent so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Republic and the Fiscal Agent duly executed by, the holder thereof or such holder's attorney duly authorized in writing, and the Republic shall execute, and the Fiscal Agent shall authenticate and deliver to the registered Holder of such Security without service charge, a new Security or Securities of this Series, of any authorized denomination as required by such Holder, in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered.]

A meeting of registered holders of Securities of this Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given or taken by registered holders of Securities of this Series or to modify, amend or supplement the terms of the Securities of this Series or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of registered holders of Securities of this Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine. Notice of every meeting of registered holders of Securities of this Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of this Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding Securities of this Series (as defined in the Fiscal Agency Agreement) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of this Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

At any meeting of registered holders of Securities duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66-2/3% [or ____ %] in aggregate principal amount of the

A-15

Securities of this Series then Outstanding, or (ii) with the written consent of the registered holders of not less than 66-2/3% [or _____ %] in aggregate principal amount of the Securities of this Series then Outstanding, the Republic [and the Fiscal Agent] may modify, amend or supplement the terms or provisions contained in the Securities of this Series, in any way, and the registered holders of Securities of this Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given, or taken by registered holders of Securities of this Series; provided, however, that no such action may, without the consent of the registered holder of each Security, (A) change the due date for the payment of the principal of or any installment of interest on any Security, (B) reduce the principal amount of any Security, the portion of such principal amount which is payable upon acceleration of the maturity of such Security or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Securities of this Series is payable, (D) reduce the proportion of the principal amount of Securities of this Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of this Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of this Series to (i) any modification of any provisions of the Fiscal agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of this Series and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Securities of this Series as soon as practicable.

All notices to the registered holders of Securities will be published in such publications at such locations as any of the Securities are listed for the period

A-16

of time of such listing and as otherwise provided pursuant to the terms of the Securities of this Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

No reference herein to the Fiscal Agency Agreement and no provision of this Security or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic to pay the principal of (and premium, if any[, on]) [and interest on] this Security at the times, place and rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect of the Securities of this Series and interest payments thereon shall be prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

This Security shall be governed by and construed in accordance with the laws of the State of New York, except with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding"). The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

The Republic has in the Fiscal Agency Agreement agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, form attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Securities of this Series to enforce or execute a Related Judgment. The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Securities of this Series and the Fiscal Agency Agreement and under no

A-18

52

circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Securities of this Series or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

A-19

53

FOR VALUE RECEIVED the undersigned hereby sell(s), assigns
or transfers unto
PLEASE INSERT SOCIAL SECURITY OR OTHER
   IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of
substitution in the premises.

Dated: _____    Signature: _____

Notice: the signature to
this assignment must
correspond with the name
as written upon the face
of the written instrument
in every particular,
without alteration or
enlargement or any change
whatever.

A-20

**EXHIBIT 2**

CNN.com - Argentina's interim president suspends debt - December 24, 2001     Page 1 of 1





 PRINT THIS

Powered by  Clickability

# Argentina's interim president suspends debt

**BUENOS AIRES, Argentina (CNN) —After 12 hours of overnight debate, Argentina's Congress on Sunday appointed Adolfo Rodriguez Saa as provisional president, and he immediately declared a moratorium on the country's massive $132 billion debt.**

Rodriguez Saa, a member of the country's majority Peronist party, will serve until March 3, when new elections will choose a leader for the remaining two years of former President Fernando de la Rua's four-year term.

De la Rua resigned Thursday after two days of bloody rioting sparked by the country's economic woes. The opposition Peronists had refused de la Rua's call to form a coalition government.

Outside legislative halls, a small group of protesters banged on pots and pans, complaining that the new appointment would not change things for the debt-ridden country.

Rodriguez Saa said he declared the suspension of the country's foreign debt because Argentina must first address domestic issues, such as hunger and the unemployment rate, which stands at 20 percent.

He said his priority was to create an emergency social plan to address these domestic issues with $350 million that was intended to help pay off the country's debt.

*CNN Correspondent Lucia Newman contributed to this report*

**Find this article at:**
http://archives.cnn.com/2001/WORLD/americas/12/23/argentina.president/index.html

☐  Check the box to include the list of links referenced in the article.

© 2007 Cable News Network.

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                :

NML CAPITAL, LTD.,                    :

             Plaintiff,         :          08 Civ. 2541 (TPG)

          - against -        :          **ANSWER**

THE REPUBLIC OF ARGENTINA,     :

             Defendant.       :
------------------------------------------------------------------- X

         Defendant the Republic of Argentina (the "Republic"), as and for its answer to the

Complaint dated March 13, 2008 (the "Complaint"), respectfully states as follows:

             1.       The first sentence of Paragraph 1 of the Complaint purports to characterize

the nature of the action brought, and, accordingly, no responsive pleading is required.  The

Republic otherwise lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of Paragraph 1 of the Complaint, except admits that it entered into a Fiscal

Agency Agreement dated as of October 19, 1994 (the "1994 FAA"), and refers to the 1994 FAA

for its true and correct contents.  To the extent Paragraph 1 of the Complaint constitutes a

conclusion of law, no responsive pleading is required.

             2.       The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 2 of the Complaint, except admits that in <u>NML</u>

<u>Capital, Ltd. v. Republic of Argentina</u>, No. 03 Civ. 8845 (TPG), plaintiff has produced

documents evidencing that NML Capital, Ltd. is a Cayman Islands corporation.

3.    Paragraph 3 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise admits that it is a foreign state as defined in 28 U.S.C. § 1603(a).

4.    Paragraph 4 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

5.    Paragraph 5 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 5 of the Complaint for its true and correct contents.  To the extent Paragraph 5 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

6.    Paragraph 6 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

7.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint, except admits that it issued a bond having CUSIP No. 040114GG9.  Paragraph 7 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 7 of the Complaint for its true and correct contents.

8.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint.  Paragraph 8 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the

2

referenced document and refers to the document cited in Paragraph 8 of the Complaint for its true and correct contents.

9.    Paragraph 9 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 9 of the Complaint for its true and correct contents.

10.    Paragraph 10 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 10 of the Complaint for its true and correct contents.

11.    Paragraph 11 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 11 of the Complaint for its true and correct contents.

12.    Paragraph 12 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 12 of the Complaint for its true and correct contents.

13.    The Republic denies the allegations contained in Paragraph 13 of the Complaint.

14.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

15.    The Republic repeats and realleges its responses to paragraphs 1 through 14 of the Complaint.

16.    Paragraph 16 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 16 of the Complaint for its true and correct contents. To the extent that Paragraph 16 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

17.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Complaint. Paragraph 17 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 17 of the Complaint for its true and correct contents.

18.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

19.    Paragraph 19 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 19 of the Complaint.

## First Affirmative Defense

20.    The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense[1]

21.     Plaintiff's claim is barred by the act of state doctrine.

### Third Affirmative Defense

22.     To the extent plaintiff is not acting in good faith in commencing and prosecuting this action, it is barred from enforcing any rights it may otherwise have.

### Fourth Affirmative Defense

23.     Plaintiff's claim is barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

24.     Plaintiff's claim is barred by the doctrine of abuse of rights.

### Sixth Affirmative Defense

25.     Plaintiff's claim is barred by N.Y. Judiciary Law Section 489.

### Seventh Affirmative Defense

26.     Plaintiff's interest claims, if any, arising before March 13, 2003 are barred in part by the applicable statute of limitations/prescription period.

### Eighth Affirmative Defense

27.     Plaintiff lacks standing and/or capacity to sue, because it is not a holder of bonds within the meaning of the 1994 FAA.

WHEREFORE, the Republic respectfully requests that the Court enter an order:

(a)     dismissing plaintiff's claim with prejudice;

---

[1]     The Republic recognizes that the Court has addressed the Second and Fifth Affirmative Defenses listed herein.  See Lightwater Corp. Ltd. v. Republic of Argentina, 02 Civ. 3804 (TPG), 2003 WL 1878420, at *5 (S.D.N.Y. Apr. 14, 2003).  The Republic pleads these Affirmative Defenses here to preserve them for potential appellate review.  In connection with the Sixth Affirmative Defense facts may exist in the present case that were not before the Court in the cases covered by the Lightwater and EM Ltd. v. Argentina, 03 Civ. 2508 (TPG), 2003 WL 22120745, (S.D.N.Y. Sept. 12, 2003) (amended Sept. 16, 2003) Orders.

(b)    awarding the Republic costs and disbursements, including reasonable attorneys' fees; and

(c)    granting the Republic such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 13, 2008

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:_____
    Jonathan I. Blackman (jblackman@cgsh.com)
    Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

6

**EXHIBIT 4**

PUBLIC DEBT

Law 26,017

Provisions additional to the provisions governing the bonds of the National State that are eligible for the swap established in Decree No. 1735/2004, but that have not been submitted for the swap ordered by the aforementioned decree. Let Decree No. 1733/2004 be ratified.

Passed: February 9, 2005

Promulgated: February 10, 2005

The Senate and Chamber of Deputies of the Argentine Nation, in Congress assembled, etc. do pass with force of Law:

ARTICLE 1 – Without prejudice to the effectiveness of any laws and regulations that may apply, the bonds of the National State that are eligible for the swap established in Decree No. 1735 dated December 9, 2004 that have not been submitted for the swap as established in the aforementioned decree shall be subject additionally to the provisions of this law.

ARTICLE 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

ARTICLE 3 – The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

ARTICLE 4 – The national Executive Power must—within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions—order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

ARTICLE 5 – The national Executive Power shall submit a report to the Congress of the Nation that reflects the effects of the swap and the new levels of debt and reduction therein.

ARTICLE 6 – Without prejudice to the above provisions, the bonds of the national State that are eligible pursuant to Decree No. 1735/04 that are deposited for any reason or on any basis to the order of courts of any instance, authority or jurisdiction, whose owners have not adhered to the swap ordered by the aforementioned decree or have not expressly stated, in the respective court proceedings, their intent not to adhere to the aforementioned swap before the closing date thereof, according to the timetable established in the aforementioned decree No. 1735/04 shall be replaced, automatically, by the "2038 STEP UP BONDS OF THE REPUBLIC OF ARGENTINA AT PAR," under the conditions established for the allocation, liquidation and issuance of such bonds by Decree No. 1735/04 and complementary provisions.

Let the Ministry of Economy and Production be authorized to issue any necessary complementary provisions to implement the replacement ordered in this article.

ARTICLE 7 – Let Decree No. 1733 dated December 9, 2004 be ratified.

ARTICLE 8 – Be it communicated to the national Executive Power.

ISSUED IN THE HALL OF SESSIONS OF THE ARGENTINE CONGRESS, IN BUENOS AIRES, ON FEBRUARY NINTH, TWO THOUSAND FIVE.

–RECORDED UNDER No. 26,017–

EDUARDO O. CAMAÑO. – DANIEL O. SCIOLI. – Eduardo D. Rollano. – Juan Estrada.

**DEUDA PUBLICA**

**Ley 26.017**

**Disposiciones adicionales a las que quedarán sujetos los bonos del Estado Nacional que resultan elegibles para el canje establecido en el Decreto Nº 1735/2004 y que no hubiesen sido presentados al canje dispuesto por el mencionado decreto. Ratifícase el Decreto Nº 1733/2004.**

Sancionada: Febrero 9 de 2005

Promulgada: Febrero 10 de 2005

El Senado y Cámara de Diputados de la Nación Argentina reunidos en Congreso, etc. sancionan con fuerza de Ley:

ARTICULO 1º — Sin perjuicio de la vigencia de las normas que resulten aplicables, los bonos del Estado nacional que resultan elegibles para el canje establecido en el Decreto Nº 1735 del 9 de diciembre de 2004, que no hubiesen sido presentados al canje según lo establecido en dicho decreto, quedarán sujetos adicionalmente a las disposiciones de la presente ley.

ARTICULO 2º — El Poder Ejecutivo nacional no podrá, respecto de los bonos a que se refiere el artículo 1º de la presente, reabrir el proceso de canje establecido en el Decreto Nº 1735/04 mencionado.

ARTICULO 3º — Prohíbese al Estado nacional efectuar cualquier tipo de transacción judicial, extrajudicial o privada, respecto de los bonos a que refiere el artículo 1º de la presente ley.

ARTICULO 4º — El Poder Ejecutivo nacional deberá, dentro del marco de las condiciones de emisión de los respectivos bonos, y de las normas aplicables en las jurisdicciones correspondientes, dictar los actos administrativos pertinentes y cumplimentar las gestiones necesarias para retirar de cotización en todas las bolsas y mercados de valores, nacionales o extranjeros, los bonos a que se refiere el artículo anterior.

ARTICULO 5º — El Poder Ejecutivo nacional remitirá al Honorable Congreso de la Nación un informe que refleje los efectos del canje y los nuevos niveles de deuda y reducción de la misma.

ARTICULO 6º — Sin perjuicio de lo establecido precedentemente, los bonos del Estado nacional elegibles de acuerdo a lo dispuesto por el Decreto Nº 1735/04, depositados por cualquier causa o título a la orden de tribunales de cualquier instancia, competencia y jurisdicción, cuyos titulares no hubieran adherido al canje dispuesto por el decreto antes citado o no hubieran manifestado, en forma expresa, en las respectivas actuaciones judiciales, su voluntad de no adherir al mencionado canje antes de la fecha de cierre del mismo, según el cronograma establecido por el referido decreto Nº 1735/04, quedarán reemplazados, de pleno derecho, por los "BONOS DE LA REPUBLICA ARGENTINA A LA PAR EN PESOS STEP UP 2038", en las condiciones establecidas para la asignación, liquidación y emisión de tales bonos por el Decreto Nº 1735/04 y sus normas complementarias.

Facúltase al Ministerio de Economía y Producción a dictar las normas complementarias que fueren necesarias para instrumentar el reemplazo dispuesto en el presente artículo.

ARTICULO 7º — Ratifícase el Decreto Nº 1733 del 9 de diciembre de 2004.

ARTICULO 8º — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS NUEVE DIAS DEL MES DE FEBRERO DEL AÑO DOS MIL CINCO.

—REGISTRADO BAJO EL Nº 26.017—

EDUARDO O. CAMAÑO. — DANIEL O. SCIOLI. — Eduardo D. Rollano. — Juan Estrada.



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK          )
                           )    ss
COUNTY OF NEW YORK         )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached Law 26,017.

Sara Rosner, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this _18_ day of _MAY_, 20_07_.

EVAN FINCH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6134600
Qualified in New York County
My Commission Expires October 03, 2009

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel 212.631.7432 fax 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. tel 415.576.9500 fax 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom tel +44.(0)20.7936.9002 fax +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com  |  www.geotext.com

**EXHIBIT 5**



**Dechert**
LLP

30 Rockefeller Plaza
New York, NY 10112-2200
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

ROBERT A. COHEN

robert.cohen@dechert.com
+1 212 698 3501 Direct
+1 212 314 0001 Fax

February 28, 2008

**VIA U.S. MAIL**

Bankers Trust Company
4 Albany Street
New York, NY 10006

Re: **Republic of Argentina 2018 Global Bonds, due June 19, 2018**

Dear Ladies and Gentlemen:

We represent NML Capital, Ltd. ("NML"), the beneficial owner of $16,719,628 principal amount of 2018 Global Bonds, due June 19, 2018, CUSIP No. 040114GG9 (the "2018 Bonds"), issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement dated as of October 19, 1994 (the "FAA"), between the Republic of Argentina and Bankers Trust Company, as Fiscal Agent. This principal amount is in addition to the $21,456,000 of the 2018 Bonds which is the subject of action 07 Civ. 1910 (TPG).

On behalf of NML, we hereby provide notice of occurrence of events of default under Sections 12(a) and (d) of the FAA and declare the principal amount of the 2018 Bonds held by NML to be immediately due and payable. We demand immediate payment of such principal, together with all accrued and unpaid interest thereon.

Sincerely,

Robert A. Cohen

cc:    Deutsche Bank c/o
       DB SERVICES TENNESSEE INC.
       ATTN:  CONTROL UNIT
       P.O. Box 305050
       Nashville, Tennessee 37230

Austin Boston Charlotte Hartford New York Newport Beach Philadelphia Princeton San Francisco Silicon Valley Washington DC
Brussels London Luxembourg Munich Paris

# Dechert
LLP

Bankers Trust Company
February 28, 2008
Page 2

Subsecretaria de Financiamiento
Hipolito Yrigoyen 250
Piso 10 – Oficina 1001
1310 Buenos Aires
Attention:  Deuda Externa

**EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

NML CAPITAL, LTD.,                                                  :

                  Plaintiff,                 :       07 Civ. 1910 (TPG)

           - against -                                         :

                      :      **ANSWER**

THE REPUBLIC OF ARGENTINA,                                         :

                  Defendant.                 :

------------------------------------------------------------------ X

       Defendant the Republic of Argentina (the "Republic"), as and for its answer to the

Complaint dated March 2, 2007 (the "Complaint"), respectfully states as follows:

       1.     The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 1 of the Complaint, except admits that it entered into a

Fiscal Agency Agreement dated as of October 19, 1994 (the "FAA"), and refers to the FAA for

its true and correct contents. To the extent Paragraph 1 of the Complaint constitutes a conclusion

of law, no responsive pleading is required.

       2.     The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 2 of the Complaint, except admits that in NML

Capital, Ltd. v. Republic of Argentina, No. 03 Civ. 8845 (TPG), plaintiff has produced

documents evidencing that NML Capital, Ltd. is a Cayman Islands corporation.

       3.     Paragraph 3 of the Complaint constitutes a conclusion of law as to which

no responsive pleading is required. The Republic otherwise admits that it is a foreign state as

defined in 28 U.S.C. § 1603(a).

       4.     Paragraph 4 of the Complaint constitutes a conclusion of law as to which

no responsive pleading is required.

5.      Paragraph 5 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 5 of the Complaint for its true and correct contents.  To the extent Paragraph 5 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

6.      Paragraph 6 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

7.      The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint, except admits that it issued a bond having CUSIP No. US040114AW0.  Paragraph 7 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 7 of the Complaint for its true and correct contents.

8.      The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint.  Paragraph 8 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 8 of the Complaint for its true and correct contents.

9.      Paragraph 9 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 9 of the Complaint for its true and correct contents.

2

10.     Paragraph 10 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 10 of the Complaint for its true and correct contents.

11.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, except admits that it issued a bond having CUSIP No. 040114AN0. Paragraph 11 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 11 of the Complaint for its true and correct contents.

12.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint. Paragraph 12 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 12 of the Complaint for its true and correct contents.

13.     Paragraph 13 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 13 of the Complaint for its true and correct contents.

14.     Paragraph 14 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 14 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such

3

characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

15.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint, except admits that it issued a bond having CUSIP No. 040114BE9.  Paragraph 15 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 15 of the Complaint for its true and correct contents.

16.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Complaint.  Paragraph 16 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 16 of the Complaint for its true and correct contents.

17.    Paragraph 17 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 17 of the Complaint for its true and correct contents.

18.    Paragraph 18 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  Paragraph 18 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

19.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint, except admits that it issued a bond having CUSIP No. 040114FC9. Paragraph 19 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 19 of the Complaint for its true and correct contents.

20.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 of the Complaint. Paragraph 20 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 20 of the Complaint for its true and correct contents.

21.    Paragraph 21 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 21 of the Complaint for its true and correct contents.

22.    Paragraph 22 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 22 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

23.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint, except admits that it issued a bond having CUSIP No. 040114GD6. Paragraph 23 of the Complaint otherwise purports to

characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 23 of the Complaint for its true and correct contents.

24.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 of the Complaint. Paragraph 24 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 24 of the Complaint for its true and correct contents.

25.    Paragraph 25 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 25 of the Complaint for its true and correct contents.

26.    Paragraph 26 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 26 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

27.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 of the Complaint, except admits that it issued a bond having CUSIP No. 040114AR1. Paragraph 27 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 27 of the Complaint for its true and correct contents.

28.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 of the Complaint. Paragraph 28 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 28 of the Complaint for its true and correct contents.

29.    Paragraph 29 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 29 of the Complaint for its true and correct contents.

30.    Paragraph 30 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 30 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

31.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31 of the Complaint, except admits that it issued a bond having CUSIP No. 040114GG9. Paragraph 31 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 31 of the Complaint for its true and correct contents.

32.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 of the Complaint. Paragraph 32 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks

7

for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 32 of the Complaint for its true and correct contents.

33.    Paragraph 33 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 33 of the Complaint for its true and correct contents.

34.    Paragraph 34 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 34 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

35.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35 of the Complaint, except admits that it issued a bond having CUSIP No. 040114BC3. Paragraph 35 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 35 of the Complaint for its true and correct contents.

36.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36 of the Complaint. Paragraph 36 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 36 of the Complaint for its true and correct contents.

37.    Paragraph 37 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 37 of the Complaint for its true and correct contents.

38.    Paragraph 38 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 38 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

39.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39 of the Complaint, except admits that it issued a bond having CUSIP No. 040114AV2. Paragraph 39 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 39 of the Complaint for its true and correct contents.

40.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40 of the Complaint. Paragraph 40 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 40 of the Complaint for its true and correct contents.

41.    Paragraph 41 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations

inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 41 of the Complaint for its true and correct contents.

42.    Paragraph 42 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

43.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43 of the Complaint, except admits that it issued a bond having CUSIP No. 040114GB0. Paragraph 43 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 43 of the Complaint for its true and correct contents.

44.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44 of the Complaint. Paragraph 44 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 44 of the Complaint for its true and correct contents.

45.    Paragraph 45 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 45 of the Complaint for its true and correct contents.

46.    Paragraph 46 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 46 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such

characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

47.    Paragraph 47 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 47 of the Complaint for its true and correct contents.

48.    Paragraph 48 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 48 of the Complaint for its true and correct contents.

49.    The Republic denies the allegations contained in Paragraph 49 of the Complaint.

50.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

51.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 51 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 51 of the Complaint for its true and correct contents.

52.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 of the Complaint, except admits that since

December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 52 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 52 of the Complaint for its true and correct contents.

53.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 53 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 53 of the Complaint for its true and correct contents.

54.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 54 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 54 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 54 of the Complaint for its true and correct contents.

55.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 55 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the

contents of the referenced document and refers to the document cited in Paragraph 55 of the Complaint for its true and correct contents.

56. The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 56 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 56 of the Complaint for its true and correct contents.

57. The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 57 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 57 of the Complaint for its true and correct contents.

58. The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 58 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 58 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 58 of the Complaint for its true and correct contents.

13

59.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt. Paragraph 59 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 59 of the Complaint for its true and correct contents.

60.     The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

61.     Paragraph 61 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 61 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

62.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62 of the Complaint. Paragraph 62 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 62 of the Complaint for its true and correct contents.

63.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 63 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

64.     Paragraph 64 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 64 of the Complaint.

65.     The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

66.     Paragraph 66 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. Paragraph 66 of the Complaint also purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the referenced document for its true and correct contents.

67.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 67 of the Complaint. Paragraph 67 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 67 of the Complaint for its true and correct contents.

68.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

69.     Paragraph 69 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 69 of the Complaint.

70.     The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

15

71.     Paragraph 71 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 71 of the Complaint for its true and correct contents. To the extent that Paragraph 71 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

72.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 of the Complaint. Paragraph 72 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 72 of the Complaint for its true and correct contents.

73.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

74.     Paragraph 74 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 74 of the Complaint.

75.     The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

76.     Paragraph 76 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 76 of the Complaint for its true and correct contents. To the extent that Paragraph 76 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

77.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77 of the Complaint. Paragraph 77 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 77 of the Complaint for its true and correct contents.

78.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

79.    Paragraph 79 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 79 of the Complaint.

80.    The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

81.    Paragraph 81 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 81 of the Complaint for its true and correct contents. To the extent that Paragraph 81 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

82.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82 of the Complaint. Paragraph 82 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the

17

referenced document and refers to the document cited in Paragraph 82 of the Complaint for its

true and correct contents.

83.    The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 83 of the Complaint, except admits that since

December 2001 it has not paid interest or principal on nonperforming debt.

84.    Paragraph 84 of the Complaint constitutes a conclusion of law as to which

no responsive pleading is required.  The Republic otherwise denies the allegations of Paragraph

84 of the Complaint.

85.    The Republic repeats and realleges its responses to paragraphs 1 through

59 of the Complaint.

86.    Paragraph 86 of the Complaint purports to characterize the contents of a

written document, which document speaks for itself.  The Republic denies such characterizations

inconsistent with the contents of the referenced document and refers to the document cited in

Paragraph 86 of the Complaint for its true and correct contents.  To the extent that Paragraph 86

of the Complaint constitutes a conclusion of law, no responsive pleading is required.

87.    The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 87 of the Complaint.  Paragraph 87 of the Complaint

ootherwise purports to characterize the contents of a written document, which document speaks

for itself.  The Republic denies such characterizations inconsistent with the contents of the

referenced document and refers to the document cited in Paragraph 87 of the Complaint for its

true and correct contents.

88.    The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 88 of the Complaint, except admits that since

December 2001 it has not paid interest or principal on nonperforming debt.

18

89.    Paragraph 89 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise denies the allegations of Paragraph 89 of the Complaint.

90.    The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

91.    Paragraph 91 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 91 of the Complaint for its true and correct contents.  To the extent that Paragraph 91 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

92.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92 of the Complaint.  Paragraph 92 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 92 of the Complaint for its true and correct contents.

93.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

94.    Paragraph 94 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise denies the allegations of Paragraph 94 of the Complaint.

95.    The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

96.    Paragraph 96 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 96 of the Complaint for its true and correct contents. To the extent that Paragraph 96 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

97.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97 of the Complaint. Paragraph 97 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 97 of the Complaint for its true and correct contents.

98.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

99.    Paragraph 99 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 99 of the Complaint.

100.    The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

101.    Paragraph 101 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 101 of the Complaint for its true and correct contents. To the extent that Paragraph 101 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

102.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 102 of the Complaint. Paragraph 102 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 102 of the Complaint for its true and correct contents.

103.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 103 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

104.    Paragraph 104 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations of Paragraph 104 of the Complaint.

105.    The Republic repeats and realleges its responses to paragraphs 1 through 59 of the Complaint.

106.    Paragraph 106 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 106 of the Complaint for its true and correct contents. To the extent that Paragraph 106 of the Complaint constitutes a conclusion of law, no responsive pleading is required.

107.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 107 of the Complaint. Paragraph 107 of the Complaint otherwise purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the

contents of the referenced document and refers to the document cited in Paragraph 107 of the Complaint for its true and correct contents.

108.   The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

109.   Paragraph 109 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise denies the allegations of Paragraph 109 of the Complaint.

### First Affirmative Defense

110.   The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense[1]

111.   Plaintiff's claim is barred by the act of state doctrine.

### Third Affirmative Defense

112.   To the extent plaintiff is not acting in good faith in commencing and prosecuting this action, it is barred from enforcing any rights it may otherwise have.

### Fourth Affirmative Defense

113.   Plaintiff's claim is barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

114.   Plaintiff's claim is barred by the doctrine of abuse of rights.

---

[1]   The Republic recognizes that the Court has addressed the Second and Fifth Affirmative Defenses listed herein.  See Lightwater Corp. Ltd. v. Republic of Argentina, 02 Civ. 3804 (TPG), 2003 WL 1878420, at *5 (S.D.N.Y. Apr. 14, 2003). The Republic pleads these Affirmative Defenses here to preserve them for potential appellate review.  In connection with the Sixth Affirmative Defense facts may exist in the present case that were not before the Court in the cases covered by the Lightwater and EM Ltd. v. Argentina, 03 Civ. 2508 (TPG), 2003 WL 22120745, (S.D.N.Y. Sept. 12, 2003) (amended Sept. 16, 2003) Orders.

### Sixth Affirmative Defense

115.    Plaintiff's claim is barred by N.Y. Judiciary Law Section 489.

### Seventh Affirmative Defense

116.    Plaintiff's interest claims, if any, arising before March 2, 2002 are barred in part by the applicable statute of limitations/prescription period.

### Eighth Affirmative Defense

117.    Plaintiff lacks standing and/or capacity to sue, because it is not a holder of bonds within the meaning of the Fiscal Agency Agreement dated October 19, 1994.

WHEREFORE, the Republic respectfully requests that the Court enter an order:

(a)    dismissing plaintiff's claims with prejudice;

(b)    awarding the Republic costs and disbursements, including reasonable attorneys' fees; and

(c)    granting the Republic such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        May 4, 2007

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:_____
        Jonathan I. Blackman (JB 3846)
        Carmine D. Boccuzzi (CB 2177)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

**EXHIBIT 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

LIGHTWATER CORPORATION LIMITED,

                Plaintiff,

            - against -

THE REPUBLIC OF ARGENTINA,

                Defendant.

02 Civ. 3804 (TPG)

**ANSWER**

------------------------------------------------------------- X

Defendant the Republic of Argentina (the "Republic"), as and for its answer to the

Complaint dated May 17, 2002 (the "Complaint"), respectfully states as follows:

    1.    The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 1 of the Complaint.

    2.    The Republic admits that it is a foreign state as defined in 28 U.S.C.

§ 1603(a) and that it is located in South America.

    3.    The Republic states that Paragraph 3 of the Complaint constitutes a

conclusion of law as to which no responsive pleading is required.

    4.    The Republic states that Paragraph 4 of the Complaint constitutes a

conclusion of law as to which no responsive pleading is required.

    5.    The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 5 of the Complaint.

    6.    The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 6 of the Complaint.

7.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint, except admits that it issued bonds with CUSIP No. 040114FC9 and ISIN No. US040114FC91.

8.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint, except admits that Morgan Stanley Dean Witter, Chase Securities, Inc. and Deutsche Bank Alex Brown acted as underwriters for certain bonds issued by the Republic.

9.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint.

10.    Paragraph 10 of the Complaint purports to characterize the terms of certain bonds issued by the Republic, and the Republic refers to those bonds for the terms thereof.

11.    Paragraph 11 of the Complaint purports to characterize the terms of certain bonds issued by the Republic, and the Republic refers to those bonds for the terms thereof.

12.    The Republic denies the allegations of Paragraph 12 of the Complaint.

13.    The Republic denies the allegations of Paragraph 13 of the Complaint.

14.    Paragraph 14 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 14 of the Complaint for its true and correct contents.

## First Affirmative Defense

15.    The Complaint fails to state a claim upon which relief may be granted.

## Second Affirmative Defense

16.    Enforcement of plaintiff's claims would violate the public policy of the United States (and thereby the public policy of New York).

17.    The Republic is currently in the worst financial crisis in its modern history. The economy is now in its fourth year of recession; external indebtedness of the Republic and its provinces exceeds $140 billion and the banking system is on the verge of collapse, with bank depositors often unable to access their funds for basic living expenses. Angry protests and rioting have resulted in numerous deaths. In the face of this grave crisis, which threatens the stability of the nation, the Republic is focused on achieving the following goals: (i) preserving the soundness of the financial system and rebuilding the country's internal payment system and access to liquidity for the Argentine people; (ii) enacting a sound budget in light of internal and external resources and (iii) launching a dialogue with creditors, including discussions with the IMF, to establish a sustainable economic program. This effort will include the commencement by the Republic of a dialogue with external creditors in order to achieve a successful reprofiling of external indebtedness.

18.    Since 1982, when sovereign debt crises began to affect many countries in Latin America and elsewhere, the United States has invested considerable efforts to help resolve debt crises, and United States public policy has evolved to address the interest of the United States and debtor nations. United States public policy has consistently supported, and cooperated with, efforts by debtor nations to adopt sound economic and fiscal policy, including the reprofiling of unmanageable external indebtedness.

19.    In this case, plaintiff is intentionally trying to thwart the Republic's attempts to equitably resolve the debt crisis by prosecuting this action with full knowledge that

the Republic is involved in efforts to commence discussions with creditors in order to reprofile its external indebtedness.

20.     Plaintiff's tactics threaten the common strategy of cooperation that has evolved in the international financial community for the orderly resolution of sovereign debt crises, through the encouragement of the United States government, international financial institutions of which the United States is a member, such as the International Monetary Fund and the World Bank.  Such tactics undermine the established cooperative framework to continued success in dealing with international financial problems.

21.     If any creditor can circumvent United States policy by resorting to the courts, without any willingness even to consider equitable debt repayment plans backed by United States policy, such conduct would be rewarded and United States policy severely impaired.

### Third Affirmative Defense

22.     Because the actions of the Republic are consistent with United States policy, as set forth in Paragraphs 16-21 of this Answer, plaintiff's claim is barred by the doctrine of comity.

### Fourth Affirmative Defense

23.     Plaintiff's claim is barred by the act of state doctrine.

### Fifth Affirmative Defense

24.     To the extent plaintiff is not acting in good faith in commencing and prosecuting this action, it is barred from enforcing any rights it may otherwise have.

### Sixth Affirmative Defense

25.     Plaintiff's claim is barred by the doctrine of unclean hands.

## Seventh Affirmative Defense

26.    Plaintiff's claim is barred by the doctrine of abuse of rights.

## Eighth Affirmative Defense

27.    Plaintiff's claim is barred by N.Y. Judiciary Law Section 489.

WHEREFORE, the Republic respectfully requests that the Court enter an order:

(a)    dismissing plaintiff's claim with prejudice;

(b)    awarding the Republic costs and disbursements, including reasonable

attorneys' fees and

(c)    granting the Republic such other and further relief as the Court may deem

just and proper.

Dated: New York, New York
        July 16, 2002

                                    CLEARY, GOTTLIEB, STEEN & HAMILTON


                                    By:_____
                                            Jonathan I. Blackman (JB 3846)

                                    One Liberty Plaza
                                    New York, New York 10006
                                    (212) 225-2000

                                    Attorneys for the Republic of Argentina


TO:    Mark L. Kalish
       Moss & Kalish, PLLC
       122 E. 42nd Street Ste. 2100
       New York, NY 10168

       Attorneys for Plaintiff

5

**EXHIBIT 8**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

EM LTD.,                                                     :

                        Plaintiff,                          :          03 Civ. 2507 (TPG)

                - against -                                  :

THE REPUBLIC OF ARGENTINA,                                  :          **ANSWER**

                        Defendant.                          :

------------------------------------------------------------ X

RECEIVED
JUN 18 2003
CHAMBERS OF
JUDGE GRIESA

Defendant the Republic of Argentina (the "Republic"), as and for its answer to the

Complaint dated April 10, 2003 (the "Complaint"), respectfully states as follows:

1.       The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 1 of the Complaint, except the Republic (i) denies that

it declared a moratorium on all payments of principal and interest on all of its foreign debt

obligations, and (ii) admits that it has not paid interest or principal, if any, in 2002 and 2003 in

connection with external debt issued by the Republic.  The last sentence of Paragraph 1 purports

to characterize the content and significance of a written document, which document speaks for

itself.  The Republic denies such characterizations inconsistent with the contents of the

referenced document and refers to the document for its true and correct contents.  To the extent

Paragraph 1 of the Complaint contains conclusions of law, no responsive pleading is required.

2.       The Republic denies the allegations of Paragraph 2 of the Complaint, and

affirmatively avers that it has met with, and continues to meet with, numerous creditors in the

United States, Japan, Italy, Germany, France and the United Kingdom, and that, additionally, it

will meet with creditors in Switzerland and other jurisdictions, that it has, as a matter of policy,

sought to be as inclusive as possible of its creditors in conducting these meetings and to avoid

giving the impression that the Republic would limit its meetings or discussions to a committee representing a select group of foreign debt holders, and that if a creditor with a position alleged to be the size of plaintiff's had approached it with a request to be included in such discussions, the Republic would have invited it to participate in them. To the extent Paragraph 2 of the Complaint contains conclusions of law, no responsive pleading is required.

3.      The Republic denies the allegations of Paragraph 3 of the Complaint, except the Republic admits that judgments have been entered against it in the total amount of less than €1.6 million in Germany, and that a temporary freeze order in connection with a maximum of €1.4 million has been entered in one case in Italy. To the extent Paragraph 3 of the Complaint contains conclusions of law, no responsive pleading is required.

4.      The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint.

5.      The Republic states that Paragraph 5 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise admits that it is a foreign state as defined in 28 U.S.C. § 1603(a).

6.      The Republic states that Paragraph 6 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

7.      Paragraph 7 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 7 of the Complaint for its true and correct contents. To the extent Paragraph 7 of the Complaint constitutes conclusions of law, no responsive pleading is required.

2

8.     Paragraph 8 constitutes a conclusion of law as to which no responsive pleading is required.  The second sentence of Paragraph 8 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 8 of the Complaint for its true and correct contents.

9.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint, except the Republic admits that it issued a debt security denominated in Argentine Pesos, having a coupon of 10.000%, due 09/19/2008, having ISIN #XS0130278467, and using Deutsche Bank AG, London as fiscal agent (the "Peso Bond").

10.     The Republic states that the allegations of Paragraph 10 of the Complaint constitute a conclusion of law as to which no responsive pleading is required, except the Republic admits that it issued the Peso Bond in June 2001, and that the documents described in Paragraph 10 of the Complaint pertain to the Peso Bond.

11.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, except the Republic admits that the Peso Bond is evidenced by a global bond deposited with Deutsche Bank AG London as common depository for Clearstream Banking, Luxembourg and the Euroclear System.  The Republic otherwise denies the allegations of Paragraph 11 of the Complaint.  To the extent Paragraph 11 of the Complaint constitutes conclusions of law, no responsive pleading is required.

12.    The Republic denies the allegations of Paragraph 12 of the Complaint, except the Republic admits that the aggregate principal amount of the Peso Bond is 930,803,703 Argentine pesos.

13.    Paragraph 13 of the Complaint purports to characterize the contents of written documents, which documents speak for themselves.  The Republic denies such characterizations inconsistent with the contents of the referenced documents and refers to the documents cited in Paragraph 13 of the Complaint for their true and correct contents.  To the extent Paragraph 13 constitutes conclusions of law, no responsive pleading is required.

14.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of the Complaint, except the Republic states that the Fiscal Agency Agreement speaks for itself and refers to the Fiscal Agency Agreement for its true and correct contents.  To the extent Paragraph 14 constitutes conclusions of law, no responsive pleading is required.

15.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint, except the Republic (i) denies that it declared a moratorium on or about December 23, 2001, (ii) denies that plaintiff made a timely election for payment in U.S. dollars and (iii) admits that it has not paid interest or principal, if any, in 2002 and 2003 in connection with external debt issued by the Republic. Paragraph 15 of the Complaint purports to characterize the contents of the Fiscal Agency Agreement, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the Fiscal Agency Agreement and refers to the Fiscal Agency Agreement for its true and correct contents.  To the extent Paragraph 15 constitutes conclusions of law, no responsive pleading is required.

4

16.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Complaint.  To the extent Paragraph 16 of the Complaint attempts to characterize the content and significance of a written document, such document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document for its true and correct contents.

17.    The Republic denies the allegations of Paragraph 17 of the Complaint, except the Republic admits, on information and belief, that a representative of Kenneth Dart, who the Republic learned after the commencement of this action is the principal of plaintiff EM Ltd., contacted an attorney at Cleary, Gottlieb, Steen & Hamilton who was not involved in representing the Republic, and affirmatively avers that neither the Republic nor its attorneys knew of plaintiff's existence before the commencement of this action, and that plaintiff did not contact any attorney representing the Republic, or otherwise attempt to explore a negotiated resolution of plaintiff's claim.

18.    The Republic denies the allegations of Paragraph 18 of the Complaint, and affirmatively avers that its meetings with creditors have not been limited to any particular group or "committee," and that it would have invited plaintiff, and any other creditor with a position alleged to be the size of plaintiff's, to these meetings as a matter of course if plaintiff had made its existence known to the Republic and asked to be invited to attend them.  The Republic admits that it has met with (and continues to meet with) creditors in the United States, Japan, Italy, Germany, France and the United Kingdom, and that, additionally, it will meet with creditors in Switzerland and other jurisdictions.

19.    The Republic denies the allegations of Paragraph 19 of the Complaint, except the Republic admits that judgments have been entered against it in the total amount of less

5

than €1.6 million in Germany, and that a temporary freeze order in connection with a maximum of €1.4 million has been entered in one case in Italy.

20.    The Republic denies the allegations of Paragraph 20 of the Complaint.

21.    The Republic repeats and realleges its responses to Paragraphs 1 through 20 of the Complaint.

22.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 of the Complaint.  Paragraph 22 of the Complaint otherwise purports to characterize the contents of written documents which documents speak for themselves.  To the extent Paragraph 22 constitutes conclusions of law, no responsive pleading is required.

23.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint.

24.    The Republic denies the allegations of Paragraph 24 of the Complaint.

25.    The Republic denies the allegations of Paragraph 25 of the Complaint.

### First Affirmative Defense

26.    The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

27.    Enforcement of plaintiff's claims would violate the public policy of the United States (and thereby the public policy of New York).

28.    Argentina is currently in the midst of the worst financial crisis in its modern history.  This grave crisis, which threatens the stability of the nation, has required the Republic to focus on preserving the soundness of the financial system, rebuilding the country's internal payment system and access to liquidity for the Argentine people and enacting a sound budget in light of internal and external resources.  The Republic is engaged in the consensual

process that will address the claims of all Republic bondholders; the process includes the completion of interim financing arrangements with the IMF and multilateral lending institutions. The Republic has also retained a financial adviser and met with (and continues to meet with) creditors in the United States, Japan, Italy, Germany, France and the United Kingdom, and that, additionally, it will meet with creditors in Switzerland and other jurisdictions.

29.    Had plaintiff disclosed its existence to the Republic and/or its representatives and sought to participate in such meetings, the Republic would have included it in them.

30.    Since 1982, when sovereign debt crises began to affect many countries in Latin America and elsewhere, the United States has invested considerable efforts to help resolve debt crises, and United States public policy has evolved to address the interest of the United States and debtor nations. United States public policy has consistently supported, and cooperated with, efforts by debtor nations to adopt sound economic and fiscal policy, including the reprofiling of unmanageable external indebtedness.

31.    In this case, plaintiff is intentionally trying to thwart the Republic's attempts to equitably resolve the debt crisis by prosecuting this action with full knowledge that the Republic is involved in discussions with creditors in order to reprofile its external indebtedness. Plaintiff has chosen, in order to advance some undisclosed agenda of its own, not to participate in these discussions.

32.    Plaintiff's tactics threaten the common strategy of cooperation that has evolved in the international financial community for the orderly resolution of sovereign debt crises through the encouragement of the United States government and international financial institutions of which the United States is a member, such as the International Monetary Fund and

the World Bank. Such tactics undermine the established cooperative framework to continued success in dealing with international financial problems.

33.    If any creditor can circumvent United States policy by resorting to the courts, without any willingness even to consider equitable debt repayment plans backed by United States policy, such conduct would be rewarded and United States policy severely impaired.

### Third Affirmative Defense[1]

34.    Because the actions of the Republic are consistent with United States policy, as set forth in Paragraphs 27-33 of this Answer, plaintiff's claims are barred by the doctrine of comity.

### Fourth Affirmative Defense

35.    Plaintiff's claim is barred by the act of state doctrine.

### Fifth Affirmative Defense

36.    To the extent plaintiff is not acting in good faith in commencing and prosecuting this action, it is barred from enforcing any rights it may otherwise have.

### Sixth Affirmative Defense

37.    Plaintiff's claim is barred by the doctrine of unclean hands.

### Seventh Affirmative Defense

38.    Plaintiff's claim is barred by the doctrine of abuse of rights.

---

[1]    The Republic recognizes that the Court has addressed the Third, Fourth and Seventh Affirmative defenses listed herein. See Orders, dated April 14, 2003 and April 25, 2003. The Republic pleads these Affirmative Defenses here to preserve them for potential appellate review. In connection with the Eighth Affirmative Defense facts exist in the present case that were not before the Court in the cases covered by the April 14 and April 25 Orders.

**Eighth Affirmative Defense**

39.     Plaintiff's claim is barred by N.Y. Judiciary Law Section 489.

Dated: New York, New York
      June 11, 2003

CLEARY, GOTTLIEB, STEEN & HAMILTON

By:

      Jonathan I. Blackman (JB 3846)
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

TO:    David W. Rivkin
       Dennis H. Hranitzky
       Debevoise & Plimpton
       919 Third Avenue
       New York, New York 10022

       Attorneys for Plaintiff

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SOCRATE PASQUALI et al.,                                    :

                                    Plaintiff,              :        05 Civ. 10636 (TPG)

                    -against-                               :        ANSWER

THE REPUBLIC OF ARGENTINA,                                  :

                                    Defendant.              :

------------------------------------------------------------X

Defendant the Republic of Argentina (the "Republic"), as and for its answer to the

Complaint, dated December 19, 2005 (the "Complaint"), respectfully states as follows:

1.      The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 1 of the Complaint, except admits that it entered into a

Fiscal Agency Agreement dated October 19, 1994 (the "1994 FAA"), and refers to the 1994

FAA for its true and correct contents.  The Republic admits that it issued a bond having ISIN

US040114FC91.

2.      The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 2 of the Complaint, except admits that it issued bonds

having ISINs US040114AN02 and US040114AR16.

3.      The Republic lacks knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 3 of the Complaint, except admits that it entered into a

Fiscal Agency Agreement dated December 10, 1993 (the "1993 FAA"), and refers to the 1993

FAA for its true and correct contents.  The Republic admits that it issued a bond having ISIN

US040114AH34.

4.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint, except admits that it issued bonds having ISINs US040114AN02 and US040114AR16.

5.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint, except admits that it issued bonds having ISINs US040114GA27, US040114GF14 and US040114AR16.

6.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint, except admits that it issued a bond having ISIN US040114AZ32.

7.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint, except admits that it issued bonds having ISINs US040114AR16 and US040114GG96.

8.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint, except admits that it issued a bond having ISIN US040114AH34.

9.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint, except admits that it issued a bond having ISIN US040114AH34.

10.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint, except admits that it issued bonds having ISINs US040114AN02, US040114GF14, US040114BE93, US040114GD65, US040114GA27, US040114AR16 and US040114GG96.

11.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, except admits that it entered into a Floating Rate and Exchange Agreement dated December 6, 1992 (the "FRB Agreement"), and refers to the FRB Agreement for its true and correct contents. The Republic admits that it issued a bond having ISIN XS0043120236.

12.    Paragraph 12 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise admits that it is a foreign state as defined in 28 U.S.C. § 1603(a).

13.    Paragraph 13 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

14.    Paragraph 14 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.

15.    In response to Paragraph 15 of the Complaint, the Republic repeats and realleges each and every response to Paragraphs 1-2, 4-7, 10 and 12-14 of the Complaint.

16.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Complaint and otherwise repeats and realleges its response to Paragraphs 1-2, 4-7 and 10 of the Complaint.

17.    Paragraph 17 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 17 of the Complaint for its true and correct contents.

18.    In response to Paragraph 18 of the Complaint, the Republic states that the 1994 FAA speaks for itself and refers to the 1994 FAA for its true and correct contents.

3

19.    Paragraph 19 of the Complaint purports to characterize the contents of a written document, which document speaks for itself.  The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 19 of the Complaint for its true and correct contents.

20.    The Republic denies the allegations contained in Paragraph 20 of the Complaint.

21.    Paragraph 21 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise denies the allegations contained in Paragraph 21 of the Complaint.

22.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 of the Complaint.  Paragraph 22 of the Complaint otherwise purports to characterize the contents of written documents, which documents speak for themselves.  The Republic denies such characterizations inconsistent with the contents of the referenced documents and refers to the documents cited in Paragraph 22 of the Complaint for their true and correct contents.

23.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

24.    Paragraph 24 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise denies the allegations contained in Paragraph 24 of the Complaint.

25.    In response to Paragraph 25 of the Complaint, the Republic repeats and realleges each and every response to Paragraphs 3, 8-9 and 12-14 of the Complaint.

4

26.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 of the Complaint and otherwise repeats and realleges its response to Paragraphs 3 and 8-9 of the Complaint.

27.     Paragraph 27 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 27 of the Complaint for its true and correct contents.

28.     In response to Paragraph 28 of the Complaint, the Republic states that the referenced "Form of Global Bonds" speaks for itself and refers to the referenced "Form of Global Bonds" for its true and correct contents.

29.     Paragraph 29 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 29 of the Complaint for its true and correct contents.

30.     The Republic denies the allegations contained in Paragraph 30 of the Complaint.

31.     The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31 of the Complaint. Paragraph 31 of the Complaint otherwise purports to characterize the contents of written documents, which documents speak for themselves. The Republic denies such characterizations inconsistent with the contents of the referenced documents and refers to the documents cited in Paragraph 31 of the Complaint for their true and correct contents.

32.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

33.    Paragraph 33 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required. The Republic otherwise denies the allegations contained in Paragraph 33 of the Complaint.

34.    In response to Paragraph 34 of the Complaint, the Republic repeats and realleges each and every response to Paragraphs 11-14 of the Complaint.

35.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35 of the Complaint and otherwise repeats and realleges its response to Paragraphs 11 of the Complaint.

36.    Paragraph 36 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 36 of the Complaint for its true and correct contents.

37.    Paragraph 37 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 37 of the Complaint for its true and correct contents.

38.    Paragraph 38 of the Complaint purports to characterize the contents of a written document, which document speaks for itself. The Republic denies such characterizations inconsistent with the contents of the referenced document and refers to the document cited in Paragraph 38 of the Complaint for its true and correct contents.

39.    The Republic lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39 of the Complaint, except admits that since December 2001 it has not paid interest or principal on nonperforming debt.

40.    Paragraph 40 of the Complaint constitutes a conclusion of law as to which no responsive pleading is required.  The Republic otherwise denies the allegations contained in Paragraph 40 of the Complaint.

<u>First Affirmative Defense</u>

41.    The Complaint fails to state a claim upon which relief may be granted.

<u>Second Affirmative Defense</u>[1]

42.    Plaintiffs' claims are barred by the act of state doctrine.

<u>Third Affirmative Defense</u>

43.    To the extent plaintiffs are not acting in good faith in commencing and prosecuting this action, they are barred from enforcing any rights they may otherwise have.

<u>Fourth Affirmative Defense</u>

44.    Plaintiffs' claims are barred by the doctrine of unclean hands.

<u>Fifth Affirmative Defense</u>

45.    Plaintiffs' claims are barred by the doctrine of abuse of rights.

---

[1] The Republic recognizes that the Court has addressed the Second and Fifth Affirmative Defenses listed herein.  See Order dated April 14, 2003.  The Republic pleads these Affirmative Defenses here to preserve them for potential appellate review.  In connection with the Sixth Affirmative Defense facts exist in the present case that were not before the Court in the cases covered by the April 14 and September 12 (amended September 16) Orders.

<u>Sixth Affirmative Defense</u>

46.    Plaintiffs' claims are barred by N.Y. Judiciary Law Section 489.

<u>Seventh Affirmative Defense</u>

47.    Plaintiffs lack standing and/or capacity to sue, because they are not holders of bonds within the meaning of the 1993 FAA, 1994 FAA or FRB Agreement.

WHEREFORE, the Republic respectfully requests that the Court enter an order:

(a)    dismissing plaintiffs' claims with prejudice;

(b)    awarding the Republic costs and disbursements, including reasonable attorneys' fees; and

(c)    granting the Republic such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 21, 2006

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:

Jonathan I. Blackman (JB 3846)
Carmine D. Boccuzzi (CB 2177)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

TO:    Joel A. Chernov, Esq.
       Dreier LLP
       499 Park Avenue
       New York, New York 10022

       Attorneys for Plaintiffs

8